HEARD NOVEMBER TERM, 1874.

BOLLMANN *vs.* BOLLMANN.

An order, by consent, referring a case, "with all the issues of law and fact," to three persons "as Special Referees," their decision to be certified to the "Court by report," and to be final and "stand as the judgment of the Court, not subject to appeal:" *Held* not to be a reference under the Code, but a submission to arbitration.

The Court has power, inherent at common law, and which is not impaired by the Code of Procedure or other law of the State, to refer, with the consent of parties, a pending case to arbitration and make the award the judgment of the Court.

To avoid an award, the contestant must show either corruption, misbehavior amount-
ing to partiality, excess of authority, such palpable mistake of facts as satisfies the
Court that, if not made, the decision would have been different, or, it may be,
that the arbitrators meant to proceed strictly according to law, but mistook it.

The direction in § 296 of the Code of Procedure that the report of Referees "must
state the facts found and the conclusions of law separately" is not mandatory, but
directory merely; and objection cannot, it seems, be made to the report for want of
conformity to the direction, unless the Referees were requested to find upon the
issues, and refused to do so, one way or the other.

The party objecting must show that he was prejudiced by the failure to conform to the
direction; and the objection cannot be taken by exception, but by motion to recom-
mit the report.

Where no objection is made before Referees to the examination of a party as a wit-
ness, it cannot be made by exception to their report.

The provisions of § 415 of the Code do not apply where the witness is not a party to the
record, has no interest in the event of the suit, and cannot be affected by the
decision.

The examination of a witness in the absence of counsel, though irregular: *Held*,
under the circumstances, to be no ground of exception to the report. So, also, an
exception that two of the Referees were used as witnesses was not allowed to pre-
vail.

The course pursued by a party and her attorneys of record in the Court below: *Held*
to amount to a waiver of her right of appeal to the Supreme Court.

Where by the terms of a submission to arbitration under rule of Court the award is to
be final and to "stand as the judgment of the Court, not subject to appeal," the
right of appeal is barred.

Where a party induces or encourages another to do an act, he cannot afterwards assert
his legal right in opposition thereto if by so doing the other will be pecuniarily
prejudiced.

Assistant counsel employed after a report is made cannot file exceptions to the report
which the attorney of record was precluded from taking by his course and admis-
missions made during the trial by the Referees.

After final judgment of the Circuit Court sustaining an award, a petition alleging that
certain evidence was improperly laid before the arbitrators cannot be considered.

Where a submission to arbitration of a pending cause refers all issues of law and fact
to the arbitrators, they have power to award as to who shall pay the costs.

BEFORE GRAHAM, J., AT CHARLESTON, JUNE TERM, 1874.

This was an action by Caroline A. Bollmann, administratrix of
Henry Bollmann, deceased, against Behrend Bollmann for an
account of partnership property and effects of the firm of Bollmann
Brothers.

The complaint alleged that a partnership between the deceased
and the defendant, for the purpose of a general grocery business,
existed from January 1, 1857, up to 23d day of February, 1870, when
the said Henry Bollmann died intestate; that on the 21st July, 1870,
letters of administration upon the estate of the intestate were granted
by the Judge of Probate to the plaintiff; that the interests of the
partners were equal participation in the profits; that there had
been no settlement up to the time of the death of Henry Bollmann
of the partnership affairs; that the defendant is in possession of

the books and papers of the firm of Bollmann Brothers, including their books of account, and that the defendant has been called upon to exhibit the same or submit a statement thereof, and in reply to said demand has submitted an incorrect statement thereof; that plaintiff being dissatisfied with the first statement submitted by defendant, the defendant submitted a second statement, different from the first, but that also is incorrect; that a balance sheet of Bollmann Brothers shows the profits of the concern to have been $257,594.75. Said balance sheet was attached to the complaint.

The complaint prayed an account of said copartnership transaction from the commencement to the close thereof, and that the defendant be decreed to pay to plaintiff the amount found to be due.

The defendant answered and admitted a copartnership existed as stated, but denied that the interest of the copartners were equal. Said there were no written articles of copartnership, but that the defendant was to receive two-thirds, and plaintiff's intestate was to receive one-third, of the net profits of the business, and that this division was to be subject to an interest account on the capital contributed by the partners respectively.

The defendant denied the correctness of the balance sheet showing profits of the concern, and falsified the same. Defendant offered to settle on certain terms stated, and denied that complainant is entitled to any such claim as set up in the complaint.

The defendant also said the terms of the copartnership were changed on 7th January, 1870, and that Diedrich Bollmann was taken in as a partner in the concern, and was to receive a certain interest therein, and that said Diedrich Bollmann is a necessary party to this action.

On the 17th of May, 1873, by consent of the attorneys, it was ordered by the Circuit Court "that this case, with all the issues of law and fact, be referred to James D. Mitchell, Christopher J. Matthews and C. Wulbern, as Special Referees, to hear all the extrinsic evidence upon all questions raised by the complaint and answer, and to examine the books of Bollmann Brothers, and to determine all questions connected with the copartnership of Bollmann Brothers, as well as those relating to the copartnership assets or that of the proportions of the partners, and to certify their decision to this Court by report. It is further ordered that the

decision of said Referees, or a majority of them, shall be final, and shall stand as the judgment of the Court, not subject to appeal."(*a*)

The trial commenced before said Referees under said order on the 9th June, 1873, and continued from time to time till the 8th June, 1874.

On June 11th, 1874, the Referees filed their report as follows:

" By an order of your Honor, this case was referred to us in these words : [Here follows a copy of the order.]

" In execution of this order, the Referees beg leave to report that they have been attended by the attorneys of the parties; that they have subjected the books of Bollmann Brothers to a searching examination ; that they have also examined witnesses produced by both parties, and that they find the assets of the copartnership to consist of :

| | | |
|---|---:|---:|
| Open accounts | $125,686 | 09 |
| Bills receivable | 28,130 | 48 |
| Cash | 6,831 | 17 |
| Stock | 52,213 | 78 |
| Bonds and stocks realized | 5,771 | 45 |
| Office furniture | 283 | 00 |
| Blockade stock collected since Henry Bollmann's death | 120 | 00 |
| | $219,035 | 97 |

" From which should be deducted :

| | | |
|---|---:|---:|
| Open accounts due per ledger | $ 9,875 | 78 |
| Open accounts not in ledger | 5,813 | 48 |
| Bills payable | 11,302 | 58 |
| Uncollected open accounts and bills receivable | 57,692 | 18 |
| Behrend Bollmann's account | 26,835 | 97 |
| Henry Bollmann's account | 9,244 | 95 |
| | $120,764 | 94 |

(*a*) In the order as signed by the Judge, the word "not" was omitted by mistake, but it was treated during the proceedings as if it had been inserted as agreed on by the attorneys of record before it was signed.

Columbia, November, 1874.

| | | |
|---|---:|---:|
| Net of assets realized............................................... | $98,271 | 03 |
| From which deduct amount allowed Referees for their fees, clerk hire, room rent................................. | 2,000 | 00 |
| Subject to division............................................... | $96,271 | 03 |

" The Referees find that this amount should be divided as follows:

| | | |
|---|---:|---:|
| Behrend Bollmann, one-half.................................... | $48,135 | 51 |
| Estate of Henry Bollmann, one-third........................ | 32,090 | 35 |
| Diedrich Bollmann, one-sixth................................. | 16,045 | 17 |
| | $96,271 | 03 |

" The Referees are not unanimous as to the shares of the copartners, Mr. Wulbern and Mr. Matthews being of opinion that the copartnership consisted of B. Bollmann, H. Bollmann and D. Bollmann, and that the shares are respectively one-half, one-third and one-sixth; Mr. Mitchell being of the opinion that Behrend Bollmann and Henry Bollmann were the only partners, and that their interest or shares were equal.

"Of the above amount of thirty-two thousand and ninety dollars and thirty-five cents, ($32,090.35,) which is the share to which the estate of Henry Bollmann is entitled, we find that the administratrix has already received the sum of twenty-eight thousand nine hundred and fifty-nine dollars and forty-eight cents, ($28,959.48,) which would leave a balance of three thousand one hundred and thirty dollars and eighty-seven cents, ($3,130.87,) to which should be added interest to date, four hundred and eighty-eight dollars and sixteen cents, ($488.16,) which will make the total amount of realized assets yet to be paid to the estate of Henry Bollmann three thousand six hundred and nineteen dollars and three cents ($3,619.03.)

" We find that in addition to the above there yet remains the following unrealized assets, subject to division in the same proportions as determined in relation to the realized assets, viz.:

| | | |
|---|---:|---:|
| Bond of G. Byrns................................................$ | 1,000 | 00 |
| State stock....................................................... | 600 | 00 |
| Uncollected open accounts and bills receivable........... | 57,692 | 18 |

Five shares Wando stock.
Real estate in Orangeburg County.

" We recommend that these unrealized assets be placed in the hands of Wm. St. J. Jervey, Henry A. DeSaussure and Charles S. Campbell, as Receivers, with power to collect the same by suit, sale or compromise.

" It is agreed that the $2,000 allowed the Referees be paid by the defendant, Behrend Bollmann, and credited to him in the partnership account.

" We are of opinion that the costs of the case, other than those already provided for, be paid from the copartnership fund, so that they fall upon the parties in proportion to their interests therein.

" The Referees are unanimous in all their findings and report, except in the matter of the shares of the copartners hereinbefore mentioned, and in the matter of Devereux's bill of $608.45."

To this report the following exceptions were filed by the plaintiff's attorneys, DeSaussure & Son:

The plaintiff excepts to the report of Messrs. C. Wulbern, J. D. Mitchell and C. Matthews, Referees, herein filed on the eleventh day of June, 1874:

1. For that the said Referees reported: "It is agreed that the $2,000 allowed the Referees be paid by the defendant, Behrend Bollmann, and credited to him on the partnership account;" whereas they should have found and reported that the $2,000 allowed the Referees constitute a part of the costs of this action, and should abide the final adjudication of the Court in regard to all the costs of this action, and meanwhile it is agreed shall be paid by the defendant subject thereto.

2. For that the said Referees reported: "We are of opinion that the costs of the case other than those already provided for be paid from the copartnership fund, so that they fall upon the parties in proportion to their interest therein;" whereas they should have found and reported that the plaintiff having recovered a larger sum than by the defendant was ever admitted to be due him in the account, the cost of this action, including as a part thereof the $2,000 allowed the Referees and such amount as has been paid J. D. Mitchell for examining the books, be paid by the defendant, Behrend Bollmann, individually.

And the following additional exceptions to said report were filed by the plaintiff's solicitors, Corbin & Stone:

Exceptions to the report of James D. Mitchell, Chistopher J. Matthews and C. Wulbern, Referees, to whom said cause stands referred, filed by Corbin & Stone, solicitors for plaintiff:

*Exception* 1. This cause was referred, by order of May 17, 1873, to said Referees to hear the evidence and determine all questions raised by the complaint and answer and certify their decision to this Court. In other words, to hear and decide the whole issue, whereby it became the duty of said Referees to hear all legal evidence upon the issues made by the pleadings and state the facts found and the conclusions of law separately. Said report, as made and filed, does not state the facts found upon the numerous and material issues made by the complaint and answer upon which testimony was produced, and upon which it became, and was, the duty of said Referees to pass, and upon which they were requested by complainant's counsel to pass and report:

1. The correctness of the statement of the balance as shown by the books of Bollmann Brothers during the existence of the copartnership business conducted by the defendant and Henry Bollmann, as shown in exhibit "C" to plaintiffs complaint. Said statement of balances and all the items thereof were put in issue, testimony introduced in reference thereto, and the Referees asked by complainant's counsel to report thereon; but said Referees have neglected and refused to state their finding upon items of said statements—in fact have omitted all reference thereto in said report.

2. The correctness of statement "B" and statement "A." The items of these statements were put in issue, and testimony was introduced in reference thereto, and the said Referees were requested by complainant's counsel to find the facts and report thereon; but the said Referees have neglected and refused so to do, and in fact have omitted from their said report all reference to the items of said statement.

3. Said Referees have not stated any items of the partnership account of Henry Bollmann and Behrend Bollmann as allowed or disallowed, although testimony in reference thereto was introduced and the said Referees were specially requested to report the facts found thereon.

4. Numerous issues of fact stated in the complaint and answer, to wit:   The issues of fact made by Sections 1, 2, 3, 7, 8, 12, 15 and 16 of the complaint and answer, material to the cause and upon which said Referees were requested by complainant's counsel to pass and state their conclusion of fact, but the said Referees have neglected and refused so to do.

*Exception* 2. For that said Referees in their said report have not stated the facts found and the conclusions of law separately, as required by law.—General Statutes, page 638, § 296.

*Exception* 3. For that the said Referees, upon the trial before them, permitted the defendant, Behrend Bollmann, to be examined as a witness as to the transactions between him, said Behrend Bollmann, and Henry Bollmann, deceased, plaintiff's intestate, to wit: As to the terms of the copartnership agreement between said Behrend Bollmann and said Henry Bollmann, made in 1857; the business transactions between them as copartners from 1857 to 1870, and an agreement between them for the dissolution of said copartnership upon certain terms stated and the formation of a new copartnership between said Behrend Bollmann, Henry Bollmann and Diedrich Bollmann in January, 1870, contrary to Section 415, General Statutes, page 672. Said testimony was duly objected to by plaintiff's solicitor, and the objection overruled and the testimony taken.

*Exception* 4. For that said Referees, upon trial of said cause before them, permitted Diedrich Bollmann, a person who has a legal interest which will be affected by the event of this action, (and so determined by said Referees,) to be examined as a witness in regard to certain transactions and communications between him, said Diedrich Bollmann, and Henry Bollman, deceased, plaintiff's intestate, to wit: As to the terms of a copartnership agreed upon between him, said Diedrich Bollmann, deceased, and Behrend Bollmann, defendant, on the 7th and 8th of January, 1870, contrary to Section 415, General Statutes, page 672. Said testimony was duly objected to by plaintiff's solicitor, and the objection overruled and the testimony taken.

*Exception* 5. For that the findings of fact in said report are contrary to evidence, and without evidence produced on the trial, amongst others the following, to wit:

Open accounts due, not in ledger........................$5,813 48

*Exception* 6. For that said report is irregular, defective and contrary to law, and should be set aside.

*Exception* 7. For that the said Referees, on the trial of said cause before them, received evidence relative to some of the issues involved in said cause in the absence and without the knowledge or consent of the plaintiff or the plaintiff's attorney, among others the following, to wit:

It being made a question as to how much was due to B. Wohlers and W. Wohlers by the firm Bollmann Brothers, on November 12, 1873, B. Wohlers was put upon his oath and testified that the amount appearing at his credit and the amount appearing at the credit of W. Wohlers (Mr. B. Bollmann's list of debts due by the firm, and not appearing on the balance sheet,) were due them by the firm for services rendered prior to March 1, 1870, in addition to the amounts appearing at their debit on the balance sheet.

At the hearing of the cause in the Court below, defendant, Behrend Bollmann, filed his affidavit, asserting that the finding of the Referees had been accepted by plaintiff's counsel and he had paid $2,000 costs to the Referees. The defendant also said that no objection was made to him as a witness in the case.

The complainant, Caroline A. Bollmann, deposed that she never assented or acquiesced in the report of the Referees made and filed in the cause; that at the time the $2,000 were paid the Referees as their costs and fees in the case by the defendant, she was utterly ignorant thereof, ignorant that the Referees had come to a conclusion in the case, ignorant of what their costs and fees were to be, and ignorant that defendant proposed to pay them; that she did not know same had been paid till brought to her attention by defendant's affidavit.

The Court made the following decree:

GRAHAM, J. Upon hearing the report of Messrs. C. Wulbern, James D. Mitchell and Christopher Matthews, Referees in this action, filed on the eleventh day of June, 1874, and the exceptions thereto filed by Messrs. Corbin & Stone, on behalf of the plaintiff, and also the exceptions thereto filed by Messrs. DeSaussure & Son, on behalf of the plaintiff, and after hearing argument thereupon by the attorneys of the plaintiff and defendant, it is adjudged, ordered and decreed that the exceptions filed by Messrs. Corbin & Stone be

overruled, and that the exceptions filed by Messrs. DeSaussure & Son be sustained; and it is adjudged, ordered and decreed that the defendant, Behrend Bollmann, personally do pay all the costs of this action, including as a part of such costs the amounts paid to James D. Mitchell for balancing the books of Bollmann Bros., and also the sum of two thousand dollars to the Referees; and that it be referred to Jacob Williman, Esq., Clerk of this Court, to tax the costs of the attorneys and clerk in this action.

It is further adjudged, ordered and decreed that in all other particulars the report of the Referees be confirmed and do stand as the judgment of this Court.

It is further ordered that either party have leave to apply at the foot of this order for any further order that may be necessary to carry this decree into execution.

Subsequent to the rendering of said decree, to wit, on the 17th of July, the plaintiff filed the following petition:

"The petition of Caroline A. Bollmann, executrix of Henry Bollmann, deceased, shows: That since the hearing of the above entitled cause, had on the 29th day of June, A. D. 1874, before the Court of Common Pleas, your petitioner has learned the facts set forth in the affidavit of J. D. Mitchell, one of the Referees, that said facts are material to the final determination of said cause, and she prays that it be referred to said Referees in the cause to report forthwith as to the truth of said affidavit, to the end that, if true, said facts may be taken into consideration in the final determination of the cause on the report and exceptions."

The following is the affidavit of J. D. Mitchell, referred to in said petition:

"Personally appears J. D. Mitchell, who, being duly sworn, deposes and says: That he was one of the Referees to whom the above entitled cause was referred; that on the last evening when the Referees, C. Wulbern, Christopher Matthews and myself, to wit, on the 6th day of June, 1874, met for consultation, and for the purpose of making up their findings in the case, it became a question, among others, as to what amount of interest should be allowed to the plaintiff on the sum found to be due her. Mr. Christopher Matthews then produced a certified copy of a bond which he said was a copy of the bond given by the plaintiff as administratrix of Henry Bollmann, and said that interest should only be allowed to the plaintiff from the date of that bond, as she was not authorized by

law to receive any payment before filing the same. This copy of bond was dated on the 17th day of February, 1872. We then used the date of this bond as the time from which to calculate the interest which was allowed plaintiff on the balance found due to her, the rate of interest allowed being at seven per cent. per annum.

"This copy of bond produced by Mr. Christopher C. Matthews had not been produced in evidence in the case before. Until that evening I knew nothing about it. In conversation with Mr. Christopher Matthews since, he mentioned to me that he got said copy of bond from Behrend Bollmann, defendant, and if there was any other bond he knew nothing about it."

On first day of August the defendant entered final judgment on the decree.

The petition of Caroline A. Bollmann, plaintiff, founded on the affidavit of J. D. Mitchell, one of the Referees, finally came up for hearing on August 18, 1874.

Two bonds of the complainant, as administratrix, one of date July 21, 1870, and the other of date February 17, 1872, were put in evidence.

The following order was proposed to the Court, and by the Court refused, to wit:

On hearing the affidavit of J. D. Mitchell, of July 16th, 1874, and the petition of the plaintiff, filed July 17th, 1874, in this cause, it is ordered that the Referees in this cause, or a majority of them, do forthwith report to this Court whether the facts stated in the affidavit of J. D. Mitchell are true, and that they do report, if true, how they came in possession of the bond mentioned in said affidavit.

To the refusal of the Court to make said order, the plaintiff excepted.

The plaintiff filed the following grounds of appeal:

The plaintiff in the above entitled cause, by her attorneys, Corbin & Stone, except to the judgment entered up by the defendant on the 30th day of July, A. D. 1874, on the following grounds:

1. The Court erred in making the order filed in said cause, on the 30th day of June, A. D. 1874, overruling the exceptions filed by Corbin & Stone to the report of the Referees. Said exceptions should have been sustained, the report of the Referees set aside, and a new trial granted.

2. The Court erred in refusing to grant the motion filed July 17th, 1874, founded upon the petition of the plaintiff and affidavit of J. D. Mitchell, one of the Referees. Said motion, postponed by absence of the Judge from the State, was finally heard, after a recess of the Court, on August 18th, 1874, upon said petition, affidavit and copies of the plaintiff's two bonds as administratrix of Henry Bollmann, deceased, and by the Court refused. Said motion should have been granted, because if the facts stated in the affidavit of J. D. Mitchell were true, then the report of the Referees filed in the cause, and the order of the Court of June 30th, 1874, confirming the same, and the judgment entered by defendant, July 30th, 1874, must have been set aside, and this on the sole ground of the misconduct of the defendant in surreptitiously placing testimony before the Referees to influence their final action in the cause, and which did materially control their action; and this after the testimony had been closed by the attorneys on both sides and counsel on both sides had made their final arguments. Also, on account of the misconduct of the Referees in thus receiving and considering said testimony; also, that said testimony, thus received, was false, and the said Referees were misled thereby, to the great wrong and damage of the plaintiff.

The defendant also gave notice of appeal, as follows:

Defendant, protesting against the right of appeal of either party in this case, nevertheless, if the plaintiff's appeal is to be heard, appeals:

1. Because, after the notice of appeal of the plaintiff, filed on the 3d of July, 1874, by Messrs. Corbin & Stone, from the decree on the merits, the defendant had a right to appeal from the decree on the question of costs.

2. Because the Referees had the right, under the order of reference, to pass upon the question of costs, and to award the same, and the Circuit Judge erred in not confirming their decision as to the costs of the action.

*DeSaussure & Son*, attorneys of record, and *Corbin & Stone*, assistant counsel, for plaintiff.

*Whaley & Minot*, for defendant.

February 26, 1875.   The opinion of the Court was delivered by

MOSES, C. J.   The principles which are to be applied to the determination of the motion in this case present no difficulty or intricacy.   The latitude which was allowed to the counsel on both sides may be referred rather to their impressions of the questions involved than to any such recognition on the part of the Court.

While we do not consider that the result of the motion depends upon the view which we may take of the order of May 17, 1873, either as a reference under the Code or a general submission to arbitrators by both parties, through the exercise of a right inherent in the Court to permit such a determination of a pending action, our conclusion is that it falls within the latter class.   The frame of it is inconsistent with one appointing a Referee under the Code. Apart from other inferences which may be drawn from its language, the exclusive power to the Referees, or a majority of them, to make a final decision, which was to stand as the judgment of the Court, not to be subject to appeal, distinguishes it from the technical reference, which is to inform the Court of the finding of facts and of law, that its judgment may be passed thereon.   It contemplates that the judgment of the Referees should be substituted for what would otherwise be that of the Court, and forbids its review by any appellate tribunal.   It has all the characteristics and distinguishing features of an arbitration at common law, and there is nothing in the Constitution or Statutes to forbid this exercise of power by the Court of Common Pleas to the same extent as assumed before the change in our judicial system.   On the contrary, it is recognized as an existing incident, for Section 11 of Chapter CXXXI of the General Statutes, p. 725, makes it an offense, punishable by fine and imprisonment, to corrupt, or attempt to corrupt, by gift or gratuity, any arbitrator in relation to any cause or matter for the decision of which he has been chosen or appointed.

Mr. Russell, in his work on Arbitrators and Awards, p. 638, says:  " In considering what may be the grounds of a motion to set aside an award, a distinction may be noticed between awards pursuant to submissions made rules of Court by the inherent jurisdiction of the Courts, and those on submissions of which the Courts take cognizance by virtue only of the statute of William III."  .

Even in those States where provision by statute is made for the arbitrament of cases, the common law right of parties to submit a

pending cause to arbitrators is not regarded as prohibited or in the least impaired, nor are the rights and incidents which properly belong to that mode of decision at all affected by the statutory regulation.—*Blunt* vs. *Whiting*, 3 Sar., 4; Voone's Code, 96; *Childs* vs. *Updyke*, 9 Ohio, 333; *Lison* vs. *Sellers*, 40 Ga., 710; *Brighton* vs. *Guthrie*, 19 Penn. St. Rep., 421; *Yates* vs. *Russell*, 17 John., 462; *Heckers* vs. *Fowler*, 2 Wall., 173.

The distinction is well illustrated and established by the case of *Milligan* vs. *Dick*, 2 Ves., Jr., 23, where a reference to arbitrators, "in the same manner as is referred to the Master, and the parties to be concluded and bound by the award," was held not in nature of a reference to the Master.

The power conferred on the Court by the Code of Procedure in regard to Referees was not a restriction or limitation of that which it exercised under its common law power. Nor can the fact that no discontinuance of the case was entered at all impair the character or force of the order. The purpose of both the parties must have been, through the submission, to obtain an award which could be made the judgment of the Court on behalf of the one in whose favor it was pronounced. To this end its confirmation was necessary, for otherwise the award, instead of being in a form in which it could operate as a lien on the property of the party against whom it was made, could have had no higher rank than any other cause of action, to be converted into a judgment only by suit.

Viewed in the light in which we regard the submission, it was not necessary that the form of proceedings which apply to " trial by Referees" under the Code should have been followed by the "Special Referees" under the order in this cause. Why the term "Special" was applied, unless to distinguish them in comprehension of power from the class designated by the Code as " Referees," and deriving their powers only from its provisions, we cannot conjecture, unless to indicate their distinction from those recognized by the Code and owing their existence to it.

An arbitration proceeds from the consent of the parties. The Court is but the instrument through which in a pending case effect can be given to their will. It contemplates an adjustment of their controversy by a forum not bound by the strict rules of law, but permitted within certain limits to substitute their own mode of investigation in the place of that through which alone Courts of justice are allowed to exercise their functions. A ready ear is not

given to objections raised by the disappointed party, who, being dissatisfied with the result by the tribunal of his own selection, applies for the interposition of that which he had before renounced.

To avoid an award, according to the decisions of our Courts, (and it is not necessary to go beyond them,) the resisting party must show either corruption, misbehavior amounting to partiality, excess of authority or such palpable mistake of facts as must satisfy the Court, if they had not been made, the decision of the arbitrators, according to their manifest intent, would have been different.— *Muller* vs. *Cravat*, 2 Bay, 370; *Executors of Radcliffe* vs. *Wightman*, 1 McC. C., 416; *Askew* vs. *Kennedy*, 1 Bail., 4.

A misapprehension or mistake of the law will not be allowed to set aside an award.—*Mitchell* vs. *Deschamps*, 13 Rich. Eq., 9; *Cohen* vs. *Habernitch*, 14 Rich. Eq., 31.

The principle so announced may be general in its terms. It should be qualified by the principle laid down by Judge Story in Section 1455 of his Equity Jurisprudence, and sustained by the authorities to which he refers, that "if they mean to decide strictly according to law and they mistake it, although the mistake is made out by extrinsic evidence, that will be sufficient to set it aside."

While regarding the submission to arbitrators as the excerise by the Court of its inherent powers, irrespective of that derived from the Code, we do not perceive any ground on which either of the exceptions could be maintained, even if assumed to be made in a reference under the Code, except that which relates to the question of costs.

Those which involve questions of law we will hereafter notice. Those which arise on the findings of fact have been passed upon by the Circuit Judge. It is enough to say that we do not see such error in his conclusions from the testimony as would justify our reversal of his judgment. Following the example of the Supreme Court of the United States in *Harral* vs. *Beall*, 17 Wall., 591, " where the question is wholly one of the weight of evidence, and involving no controverted proposition of law," we do not feel ourselves called upon " to reproduce in our opinion the facts on which our judgments rest in such cases." More particularly will this rule be observed when our conclusions on the facts are in accord with those of the Judge below.

The exceptions which may be regarded as raising questions of law are :

1. That the report did not state the facts found and the conclusions of the law separately.

2. That the defendant and Diedrich Bollmann were permitted to testify.

3. In not allowing interest from the death of Henry Bollmann.

4. That two of the Referees were used as witnesses.

5. That the evidence of Wohlers was received in the absence of the appellant's counsel.

In regard to the first, it may be enough to say that the language of the Code is to be considered as directory and not mandatory. In *Grant* vs. *Morse*, 22 N. Y., C. J. Comstock says, at page 325 : " If the report disclosed that the Referee was requested to find upon the issues, and refused to do so, one way or the other, a question would be presented not now necessary to be determined. It was the privilege of the defendants, in procuring the Referee to settle it, to require him to find on all the issues the one way or the other." No such demand in the case before us was made, and the party cannot take advantage of her own omission and be allowed to present an exception the necessity of which could have been avoided by her own foresight. But even if the exception was tenable, the appellant should certainly be required to show how she was prejudiced by the want of the separation of the issues of law and fact in the report. In addition to what has been said, if the separation was necessary to a better understanding of her rights, her course was not to except because of the omission, but to move for a recommittal of the report, that it might be reproduced in the desired form.

As to the second exception, no objection was interposed to the examination of the respondent as a witness, and it is too late to now make it. Diedrich Bollmann was no party to the record ; has no interest in the event of the suit ; the judgment could in no particular affect him ; could never apply to him as *res adjudicata ;* and there is nothing in Section 415 of the Code which could, therefore, render him incompetent as a witness between the parties in the cause.

The exception as to the examination of Wohlers in the absence of the counsel cannot prevail. Although it was irregular, yet, as the Referees kept full and correct minutes, which were always open

to the inspection of the counsel, and as the examination of Wohlers was brought to his notice at a subsequent meeting, and as the witness was fully examined by him on the very subject matter to which he had testified at the previous meeting in his absence, how has she been prejudiced by what, from the previous course of her attorney, can be viewed only as an inadvertence, causing her no injury?

The exception that two Referees were used as witnesses does not come with a good grace from the appellant. As far as it extends to the testimony of Mitchell at the meeting on July 8th, 1873, the counsel being present, "it was agreed that his statement should be taken as a starting point, and on motion of Mr.        , attorney for the respondent, it was proved by Mitchell to be the one taken from the books." At the meeting of August 1st, 1873, the appellant's counsel "examined and swore him in regard to the correctness and accuracy of the several amounts due, as appeared in his balance sheet of the books."

The remaining exception is as to the interest. This is the only one that appears to be entitled to any consideration, if the order of the Court could be viewed as directing a reference under the Code, and then it would be subject to the objection that it was waived, because, with full knowledge of the conclusion of the Referees as to the interest, no expression, or even intimation, of dissent was interposed by the counsel or by the appellant until June 22d, 1874, although exception to the charge of the costs to the copartnership was taken on the 16th of the same month. Independent, too, of the terms of the submission "that the decision of said Referees or a majority of them shall be final and shall stand as the judgment of the Court, not subject to appeal," the course of the appellant debars her from seeking a review of the award on any of the grounds she has submitted. With notice of it, her counsel expressed himself "bound by it, and would at any day go into Court and consent to the confirmation." Besides this, he admitted in the Court below "that he felt bound not to appeal except upon the question of costs raised in his exceptions." This was but a compliance with the demand of the law. It was required by the submission, through the accepted construction which must be given to such an instrument. "Where an order of reference contains a clause restraining the parties from bringing a writ of error, they are precluded from moving in arrest of judgment."—*Chowner* vs. *Bowen*, 2 Dowl. & S., 706.

But there are still other matters in the case that bear on all the exceptions and are as to the costs, which must preclude them. With knowledge of the fact that the $2,000 reserved to cover the expenses of the Referees, clerk, &c., had been charged to the copartnership fund, "it was agreed by the attorneys on both sides that it shall be paid to them by Mrs. B. Bollmann at once, &c.," and in their presence the payment was made. This is an acquiescence on the part of the appellant which should conclude her appeal, except to that portion of the award to which objection by her counsel was made. The payment must be assumed to have been induced by the purpose to which it was to be applied and the credit which was to be given to the respondent on the copartnership fund. It was a fair impression on his part that the charge which the allowance created was to stand without dispute. The principle on which the Court proceeded in *Kennard* vs. *Harris* (2 Barn. & Cress., 801,) to some extent applies here. It is well and truly expressed by Mr. Justice Curtis, in *Swain* vs. *Leamin*, 9 Wallace, 274: "When a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent if his conduct or acts of encouragement induce the other party to change his position so that he will be pecuniarily prejudiced by the assertion of such adversary claim."

Most of the points involved in the case, made since the award, have arisen from the irregularity of the proceedings which have followed. While there is no doubt or question of the propriety of the professional motives which have induced the action of the counsel for the appellant, if the mode pursued is allowed, it must lead to a course of practice which the Court cannot accept. While the attorney on record, the only one who represented her from the filing of the complaint to the award, (and still represents her,) concedes that he is bound not to appeal from the judgment of the Referees, (except as to the costs,) assistant counsel, retained after it is made, and not knowing to what extent the attorney on record may have committed himself against an appeal, finding what he believes to be errors, from which his clients, in his judgment, can be relieved, submits exceptions, which his colleague, by his own admissions, does not feel justified in taking, by reason of his own course in the previous conduct of the cause. There must be a time for the cessation of litigation in every case; and if the honest zeal of every new counsel employed can see objections which he thinks may favorably

affect his cause, although the counsel of record regards himself as not permitted to take them, when is the contest between the parties to terminate?

We concur with the Circuit Judge in refusing the motion founded on the affidavit of Mitchell, the notice of which was given on the 16th July, 1873. On the 30th June preceding, the judgment of the Court was pronounced. It disposed of the award and the arbitrators. It is of the very essence of an award that it should be final. The Court acts upon it in the light of a judgment, leaving nothing in the submission to be afterwards passed upon. If the appellant can claim any relief through the matter referred to in her petition, it cannot be afforded through the mode in which she has sought it. It is proper, in passing on this point, to say that the Referees had full knowledge of the time of the death of the intestate and the date of the grant of the letters of administration, for they were both set forth in the complaint. The first bond necessarily preceded the letters. It involved at most but a question of fact, and we see nothing which requires us to interfere with the course of the Circuit Judge in regard to it.

It remains to consider the motion on the part of the respondents: "Protesting against the right of appeal of either party, nevertheless, if the plaintiff's appeal is to be heard," the respondent appeals from the order of the Circuit Court requiring him personally to pay all the costs of the action, including the amount paid the Referees. His appeal arises out of the exception of the plaintiff's counsel to so much of the award as required the costs of the case and the amount paid the Referees to be borne by the copartnership. We have already passed upon the question raised on the payment of the $2,000 to the Referees, and, for the reasons assigned, so much of the decree of the Circuit Judge as disallows it as a charge against the copartnership must be reversed.

In rendering our judgment on so much of the motion of the defendant as relates to the *costs*, it must be understood that the rules by which we will be governed are those applicable to an award by arbitrators, for such we regard the return made to the Court, and not to a reference under the Code.

A matter of costs is not generally the subject of appeal, and it is sustained here, not purely as one of that character, but rather as drawing in question the right of the Circuit Court to entertain any exception to the award.

It must be decided by the solution of a single proposition. Did the reference of the pending case, with all issues of law and fact, to arbitrators carry with it as an incident of the submission the question of costs?

Mr. Russell, in his work on Arbitrators and Awards, page 371, says: "When a cause alone or a cause and all matters in difference are referred, and nothing is said in the submission respecting costs, the arbitrator has an implied authority to adjudicate respecting the costs of the cause, but not of the reference or award."

Mr. Billings, in his Treatise on Award, page 188, says: "Where the submission is silent as to the costs of the cause, the arbitrator has power to award them, for it is an act consequent upon the authority conferred upon him for determining the cause, and the insertion of a direction as to the costs is a restriction of his power of allowing the costs at his own election."—See *Roe* vs. *Doe*, 2 T. R., 644.

Mr. Watson, in his volume on Arbitration and Awards, page 94, says: "It is perfectly clear that where a cause is referred, and the order of reference is silent as to costs, the arbitrator has power over the costs of the *action*, but not over the costs of the reference."

The American authorities do not concur in any general rule.—See Morse on Arbitration, page 126. They seem, however, to recognize a distinction in regard to the power over costs between the reference of a matter *in pais*, where no cause is pending, and one of a subsisting action. Untrammeled by any prevailing rule in the American Courts, different from that established by the English authorities,—drawing our conclusions from principles prevailing in both,—we feel bound to follow the latter. The purpose proposed by the arbitration of a cause is to withdraw it from a trial according to the fixed rules of law and submit it to the adjudication of a forum not bound by those of a defined and established character, either as to its mode of conduct or decision.

"This case, with all its issues of law and fact, was referred to 'special Referees' to hear all extrinsic evidence upon all questions raised by the complaint and answer, its decision to be final, and to stand as the judgment of the Court, not subject to appeal." A submission more general could not be framed. Costs had already accrued; further costs were necessarily to follow. The case was withdrawn from the Court in which it originated and committed for a final decision to a tribunal chosen by the parties. If the power

to award as to the costs was not regarded as an "unquestionable incident," where was it left? Not in the Court, for both the plaintiff and defendant, by the exercise of a rightful power, had remitted it to judges of their own creation. They should abide by their choice.

It is ordered that the case be remanded to the Circuit Court for such orders as may be necessary to carry out the views expressed in this opinion.

*Wright,* A. J., and *Willard,* A. J., concurred.