Henry GRAMLING, Plaintiff,

v.

**FOOD MACHINERY AND CHEMICAL CORPORATION, Defendant.**

Civ. A. No. 1997.

United States District Court
W. D. South Carolina,
Spartanburg Division.

June 19, 1957.

Holcombe & Bomar, Sam R. Watt, Spartanburg, S. C., for plaintiff.

Butler & Chapman, Spartanburg, S. C., Thomas H. Pope, Newberry, S. C., for defendant.

WYCHE, Chief Judge.

This action was commenced in July, 1956 for the recovery of $187,500 for damage to several peach orchards, alleged to have been caused by the application of spray materials purchased from defendant.

The case was set for trial at the October, 1956, term of court in Spartanburg, but was continued, upon defend-

ant's motion, in order to allow it more time for discovery procedure.

The case was thereafter set for trial at the succeeding April, 1957, term. After it had been called for trial and the jury selected and sworn, the parties entered into a compromise agreement which provided in substance as follows: (1) The amount of plaintiff's actual damage would be determined by six arbitrators, two to be appointed by each party and an additional one selected by each party from a list submitted by the other; (2) The arbitrators would make their determination under stipulated instructions of law, but without resort to evidence; (3) Defendant would pay plaintiff in full settlement of the claim, one-half of the amount of damage determined by the arbitrators; (4) After the arbitrators had made their award, either party might "enter up judgment on the award forthwith"; (5) An award should be made within forty-five days, or the cause discharged from arbitration; and the award, if signed by at least four of the arbitrators should "be binding upon the parties hereto, without any right of appeal from the award".

In accordance with the compromise agreement, the question of the amount of plaintiff's damage was submitted to a Board of Arbitrators, which consisted of the following: Roy J. Ferree, Leader of Extension Horticulture of the South Carolina Extension Service, with headquarters at Clemson College (who was selected by the other Arbitrators to serve as Chairman); D. H. Peterson, Pathologist of the United States Department of Agriculture, assigned to the South Carolina Experiment Station at Clemson College; E. F. Savage, Head of the Department of Horticulture of the State of Georgia; W. J. Sprinkle and Homer L. Johnson, large peach growers; and John M. Rigby, real estate broker.

No instructions were given to the Arbitrators by me without the express consent of counsel for both sides, and counsel for both sides stated in open court that they agreed with the instructions given.

On May 16, 1957, an award, signed by Arbitrators Ferree, Peterson, Sprinkle and Johnson (but not by Arbitrators Savage and Rigby) was filed with the Clerk of Court. It fixed the damage to each of the orchards separately, the total being $130,015.

Over the objection of counsel for the defendant, I directed the Clerk of Court to enter judgment for the plaintiff on the award made by the Arbitrators "without prejudice to the rights of the defendant to make any motion the defendant may deem advisable to vacate the judgment".

The case is now before me on defendant's motion to set aside the award on the following grounds: (1) that the award was so grossly excessive as to amount to legal fraud; (2) that the Arbitrators violated the provisions of the arbitration agreement and the Court's instructions relative to the measure of damages; and (3) that the award was invalid under the Federal Arbitration Act, 9 U.S.C.A. § 10(c, d).

Defendant further moved for an order requiring the Arbitrators to appear and testify regarding the basis of their award and tendered the affidavits of Arbitrators Savage and Rigby regarding the deliberations of the Board of Arbitrators.

Defendant also moves to vacate the judgment heretofore entered for the plaintiff.

Both parties agreed not to appeal from the award. Paragraph III of the Compromise Agreement specifically provides that "Any award * * * shall be binding upon the parties hereto, *without any right of appeal from the award; * *.*"* (Emphasis added.)

A motion to set aside or modify an award is the only way to appeal from it to this court.

Defendant does not impugn the agreement to arbitrate. There is no charge of mistake, misrepresentation, lack of consideration or other infirmity in the agreement. Defendant relies upon the agreement in an attempt to prove that the Arbitrators violated its terms. If the Ar-

bitrators were bound by the agreement it is valid. If it is valid, defendant likewise is bound by it.

■ Both parties were entitled to have their differences resolved by jury trial. Instead, they agreed to arbitration. Both agreed that the amount of plaintiff's damages, and only that issue, would be submitted and that defendant would pay, and plaintiff would accept in settlement, one-half of the damage so found. This was a valid and binding contract, amply supported by consideration.

■ A contract not to appeal, if supported by consideration, is binding upon the parties to it. Bollmann v. Bollmann, 1874, 6 S.C. 29. In that case the parties agreed to submit all issues of law and fact to three persons, their decision to be certified to the court and to "be final and stand as the judgment of the court, not subject to appeal". The South Carolina Supreme Court held that: "An arbitration proceeds from the consent of the parties. The Court is but the instrument through which in a pending case effect can be given to their will. It contemplates an adjustment of their controversy by a forum not bound by the strict rules of law, but permitted within certain limits to substitute their own mode of investigation in the place of that through which alone Courts of justice are allowed to exercise their functions. A ready ear is not given to objections raised by the disappointed party, who, being dissatisfied with the result by the tribunal of his own selection, applies for the interposition of that which he had before renounced."

In that case, appellant's original counsel felt himself obligated not to appeal from the award (except on the question of costs), because he had agreed not to. The Supreme Court of South Carolina, affirming the Circuit Court Order, which confirmed the Arbitrators' Award, said: "Besides this, he admitted in the Court below 'that he felt bound not to appeal except upon the question of costs raised in his exceptions.' This was but a compliance with the demand of the law. It

was required by the submission, through the accepted construction which must be given to such an instrument."

It is stated in 2 Amer.Jur., Appeal and Error, § 204: "Though there are a few cases to the contrary, the rule prevailing in the great majority of the jurisdictions is that an agreement, based on a sufficient consideration, not to appeal or take a writ of error, or a release of errors, is valid and binding, and, when properly pleaded, will constitute a bar to proceedings taken in violation of the agreement."

The same rule has been recognized and applied in the Federal Courts, with respect to an agreement not to appeal from a judgment of the trial court. In United States Consolidated Seeded Raisin Co. v. Chaddock & Co., 9 Cir., 173 F. 577, 579, certiorari denied Ex parte United States Consolidated Seeded Raisin Co., 215 U.S. 591, 30 S.Ct. 407, 54 L.Ed. 340, where both parties had agreed not to appeal, the Circuit Court of Appeals, in dismissing the appeal from the District Court said: "* * * it seems to be universally held that, where such an agreement is made upon a valid and legal consideration, either before or after trial, it will be enforced in an appellate court, and the appeal, if taken, will be dismissed [citing authorities]."

In Bower v. Eastern Airlines, 3 Cir., 1954, 214 F.2d 623, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685, the Court said that the general rule was that a court will not review the merits of a common-law arbitration award which the parties agreed to accept as final.

■ Defendant is bound by its contract to accept the award as final, and not to appeal from it. If either party could now attack the award, that contract would be meaningless.

But, independently of the agreement not to appeal, defendant, in my opinion, has shown no valid ground for setting aside the award.

■ An award should, in the absence of the most compelling reasons, be sustained. In Bollmann v. Bollmann, supra,

6 S.C. 29, the Supreme Court of South Carolina, stated: "It is of the very essence of an award that it should be final. The Court acts upon it in the light of a judgment, leaving nothing in the submission to be afterwards passed upon."

Judge Augustus N. Hand, speaking for the Second Circuit Court of Appeals in Karppinen v. Karl Kiefer Machine Co., 1950, 187 F.2d 32, 34, said: "It goes without saying that there should be great hesitation in upsetting an arbitration award. The award here must stand unless it is made abundantly clear that it was obtained through 'corruption, fraud, or undue means.'"

In 3 Amer.Jur., Arbitration and Award, § 172, this statement is made: "It is the settled rule that the courts will not review the findings of law and fact contained in an award, and will never undertake to substitute their judgment for that of the arbitrators." Any other rule would make an award the commencement, not the end, of litigation. Patriotic Order, Sons of America Hall Ass'n v. Hartford Fire Ins. Co., 1931, 305 Pa. 107, 157 A. 259, 78 A.L.R. 899.

■ Everything is to be presumed, and every reasonable intendment made, in favor of an award. Karthaus v. Ferrer, 1 Pet. 222, 26 U.S. 222, 7 L.Ed. 121; Wabash Ry. Co. v. American Refrigerator Transit Co., 8 Cir., 1925, 7 F.2d 335, certiorari denied 270 U.S. 643, 46 S.Ct. 208, 70 L.Ed. 776.

Again, in 3 Amer.Jur., Arbitration and Award, § 176, it is said: "In general, the evidence to warrant impeachment or alteration of an award must be clear and strong; merely slight evidence is insufficient, for once an award is established, either by admission, by pleading, or by evidence, every fair presumption is intended in its favor, and none indulged against it. As already noted, the award is itself the best evidence of matters determined thereby, and is generally conclusive evidence as well, not subject to variation by parol or extrinsic evidence, though the latter may be admissible to explain it in some particulars."

■ At common law, an award of arbitrators can be set aside, in the absence of an agreement not to appeal, upon four grounds, and only four. They are: (1) Corruption; (2) Misbehavior amounting to partiality; (3) Excess of authority; and (4) Such palpable mistake of facts as to satisfy the court that, if it had not been made, the decision of the arbitrators, *according to their manifest intent*, would have been different. Bollmann v. Bollmann, supra, 6 S.C. 29, and cases therein cited.

The issue of damage appears to have been submitted to arbitration in the instant case according to the rules of common law. No federal statute was referred to in the Compromise Agreement, and no statutory procedure was sought to be invoked. But even if the statute is held applicable, defendant still has made out no ground for relief.

The statutory grounds for vacating an award, 9 U.S.C.A. § 10, are substantially the same as those at common law. They are as follows: (1) Where the award was procured by corruption, fraud or undue means; (2) Where there was evident partiality or corruption in the arbitrators; (3) Where the arbitrators were guilty of misconduct or misbehavior prejudicial to the rights of a party; and (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award was not made. 9 U.S.C.A. § 11, has reference to modifying or correcting an award and has no application here.

The Arbitrators were duly sworn by me to make a just and honest award. The form of the oath is attached to the Compromise Agreement. My instructions to the Arbitrators were in simple, understandable language. I cannot say that the majority of the Arbitrators ignored my instructions.

Nowhere does the defendant charge the Arbitrators with fraud, corruption, undue means, partiality, misconduct, misbehavior or mistake of facts. Counsel for the defendant in their oral argument in open court admitted that the Arbitrators were men of high character and in

their written briefs they stated that "While we do not charge actual fraud on the part of the Arbitrators, nevertheless we do contend that the effect of the Award in this case is such as to constitute a legal fraud".

■ To reach this conclusion, counsel for the defendant ask me to take judicial notice that the award was arbitrary and grossly excessive. "Judicial Notice" or "Judicial Knowledge" means that the court will bring to its aid, without proof or evidence of the facts, its knowledge of the existence or nonexistence of such facts. Carter v. Neeley's Estate, 102 Ind.App. 257, 2 N.E.2d 221, 222. See other definitions in Vol. 23, Words and Phrases, Judicial Notice, pages 294, 295, 296.

■ To do what counsel ask me to do, I would have to take judicial notice of the value of each of the peach orchards and its productivity and earning power, both before it was damaged and afterwards. I never saw the peach orchards before or after the damage was done. I do not know anything about the productivity, the value or the earning power of the peach orchards in this case or any other peach orchard. I cannot, therefore, take judicial notice that the award was so grossly excessive as to amount to a legal fraud. The Arbitrators know more about the value of peach orchards, their productivity and earning power than I do. The Arbitrators were selected because of their special knowledge of peach trees and their productivity and their earning power, and their experience in growing peach trees. The training and experience of these Arbitrators, with the possible exception of Mr. Rigby, peculiarly qualified them to place a proper value on these orchards. In the absence of a charge of actual fraud, and there was none, I must assume that the Arbitrators, in compliance with their oath, honestly exercised their best judgment. Since I know so much less than the Arbitrators about peach orchards, their productivity and their value, I cannot see how I can take judicial notice of values different from those which the Arbitrators found, they being men of high character, experience and well-informed concerning peach orchards, their productivity, their earning power and their value; neither can I say that their award was so grossly excessive as to have the effect of legal fraud.

On this question, the instant case is similar to Linder v. Cowpens Cotton Oil Co., 1926, 146 S.C. 355, 144 S.E. 73, 78, where appellant urged the court to take judicial notice that off-grade cotton was worth only 14 cents per pound on the date that the price of middling cotton was conceded to be 21.75 cents per pound. The Court held that the value of off-grade cotton on that date was not a proper subject of judicial notice and said: " * * in the absence of any testimony on the question, it was proper for the members of the jury to use their common sense and experience as business men in ascertaining the value of the cotton in question".

That principle would seem to be particularly applicable where, as here, the finders of fact are selected for their peculiar fitness to perform that task and are authorized to do so without considering any evidence.

Under the circumstances of this case, I cannot take judicial notice of the very facts the Arbitrators were selected to establish. I cannot hold, as a matter of law, that the values fixed by the Arbitrators were excessive, for to do so would be to substitute my judgment for that of the Arbitrators. It would not be proper to do so, even though I thought that the Arbitrators' award may have been excessive.

The Court of Appeals of the Fourth Circuit had this question before it in Firemen's Fund Ins. Co. v. Flint Hosiery Mills, 1935, 74 F.2d 533, 536, 104 A.L.R. 556, certiorari denied 295 U.S. 748, 55 S.Ct. 826, 79 L.Ed. 1692. There, under an arbitration clause in an insurance policy, the arbitrator (or umpire) found fire damage to plaintiff's machines

to be $5,640. The District Court set aside the award as inadequate and fixed the damage at $22,024.55. On appeal the Court of Appeals reversed the District Court and remanded the case for reinstatement of the award, and stated the rule to be: "It is well established that every reasonable presumption will be indulged to sustain an award, and that a court may not substitute its judgment for that of the arbitrators, or set aside an award for mere inadequacy in amount, unless it is so great as to indicate corruption or partisan bias on the part of the arbitrators. * * * It was freely admitted in argument that the umpire was a man of high character and entirely disinterested in the result of the case. There is nothing to indicate that he acted improperly, and nothing except the widely varying estimates of the opposing witnesses to show that the amount awarded was incorrect. It may be that the aggregate sum of $22,024.55, found by the District Court without itemization, more nearly represents the actual loss sustained by the plaintiff than the sum of $5,640 awarded by the umpire; but, to reach such a conclusion, it is necessary to weigh the evidence and to make an independent finding of fact. To do this, however, is to substitute in place of an arbitration, upon which the parties have agreed, the findings of another tribunal, and in effect to set aside the contract which they have made."

In Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 187, 98 L.Ed. 168, plaintiff was suing defendant under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., for false representations made in inducing a sale of securities. The contract contained an arbitration clause, and the question was whether that clause was rendered void by Section 14 of the Securities Act which declared invalid any "condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of the Act." The Supreme Court held the arbitration agreement void because it lessened the purchaser's advantage under the Act and because er-

rors of the arbitrators in the interpretation of the governing law were not subject to judicial review, and said: "As their award may be made without explanation of their reasons and without a complete record of their proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as 'burden of proof,' 'reasonable care' or 'material fact,' see note 1, supra, cannot be examined. Power to vacate an award is limited. While it may be true, as the Court of Appeals thought, that a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would 'constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act,' that failure would need to be made clearly to appear. In unrestricted submissions, such as the present margin agreements envisage, the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation."

■ This rule is particularly applicable where the arbitrators are selected, as they were in the instant case, for their peculiar knowledge and special fitness to make a factual determination of their own, without resort to evidence. In such a case, it is contemplated that the arbitrators should use their own knowledge and make their own investigation. In American Almond Products Co. v. Consolidated Pecan Sales Co., 1944, 144 F.2d 448, 451, 154 A.L.R. 1205, the Court of Appeals of the Second Circuit held that it was proper for the arbitrators there to make a money award, even though there was no evidence of the market value of the product involved, for it was intended by the parties that the award should be final, and a resort by the arbitrators to their own knowledge and investigation was the only means open to them. Judge Learned Hand, who wrote the court's opinion, said: "Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance.

But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery."

In the A.L.R. annotation to the above case, 154 A.L.R. 1210, this general rule is laid down: "It is a general rule that arbitrators who are selected upon the basis of special fitness or knowledge in the field to which a dispute relates, with the evident intention that the process of arriving at a decision should include the exercise thereof in a manner supplementary to such facts as may be established or in connection with a necessary or contemplated factual determination of their own, may, in the absence of other restrictions or controlling evidence, rely wholly or partially upon their own knowledge, or information acquired through a proper use of such knowledge in personal observation or investigation."

To set aside the award on the grounds urged here would violate the applicable rule of law which was aptly expressed in Patriotic Order, Sons of America Hall Ass'n v. Hartford Fire Ins. Co., supra, 305 Pa. 107, 157 A. 259, 262, 78 A.L.R. 899 as follows: "The general rule undoubtedly is that, unless restricted by the agreement of submission, arbitrators are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either. And this is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally."

To substantiate its charge that the Arbitrators violated my instructions in arriving at the amount of plaintiff's loss, defendant tendered the affidavits of two of the Arbitrators, and moved the court for an order requiring all of them to appear in court for examination and cross-examination regarding the method of arriving at their award, and by this method endeavor to impeach the award by the testimony of the Arbitrators.

This mode of attacking the award, in my opinion, is improper. The deliberations of an arbitration board are as much a part of the judicial process as the deliberations of a jury and should be as zealously protected.

Under the law of South Carolina, a juror may not testify as to the deliberations in the jury room, impeach the verdict, or contradict the record. State v. Cash, 1927, 138 S.C. 167, 136 S.E. 222; Sanders v. Charleston Consol. R. & L. Co., 1930, 154 S.C. 220, 151 S.E. 438; Caines v. Marion Coca-Cola Bottling Co., 1941, 196 S.C. 502, 14 S.E.2d 10.

The public policy on which this rule is grounded is expressed in 53 Amer.Jur., Trial, § 1105: "The rule is founded on public policy, and is for the purpose of preventing litigants or the public from invading the privacy of the jury room, either during the deliberations of the jury or afterward. It is to prevent overzealous litigants and a curious public from prying into deliberations which are intended to be, and should be, private, frank, and free discussions of the questions under consideration. Further, if after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would open the door for tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under sanction of an oath."

The same considerations of public policy are equally applicable to the impeachment of an arbitrator's award; for arbitrators, like jurors, must have "private, frank and free" discussions of the issues involved.

The authorities generally hold that the testimony of an arbitrator tending to impeach the award is incompetent and should be rejected. Patriotic Order,

Sons of America Hall Ass'n v. Hartford Fire Ins. Co., supra, 305 Pa. 107, 157 A. 259, 78 A.L.R. 899; Evans v. Edenfield, 1909, 7 Ga.App. 175, 66 S.E. 491; Eberhardt v. Federal Ins. Co., 1913, 14 Ga.App. 340, 80 S.E. 856; Alexander v. Fletcher, 1943, 206 Ark. 906, 175 S.W.2d 196; Sydnor Pump & Well Co. v. County School Board, 1943, 182 Va. 156, 28 S.E.2d 33; Johns v. Security Ins. Co., 1934, 49 Ga.App. 125, 174 S.E. 215; Wechsler v. Gidwitz, 1928, 250 Ill.App. 136; Giannopulos v. Pappas, 1932, 80 Utah 442, 15 P.2d 353; Koepke v. E. Liethen Grain Co., 1931, 205 Wis. 75, 236 N.W. 544; Putterman v. Schmidt, 1932, 209 Wis. 442, 245 N.W. 78; Stone v. Baldwin, 1907, 226 Ill. 338, 80 N.E. 890; City of Eau Claire v. Eau Claire Water Co., 1909, 137 Wis. 517, 119 N.W. 555.

This principle is well summed up in 3 Amer.Jur., Arbitration and Award, § 178, as follows: "As in proceedings for enforcement of awards, the award is admissible and is the best evidence of matters purportedly determined by it; it cannot be altered by parol, nor is parol evidence admissible to prove an understanding or meaning of the arbitrators, different from that warranted by the terms of the award. Therefore, the general rule is that the testimony of an arbitrator is not admissible to impeach his own findings, and where the arbitrators recite in the award itself that they have disposed of the matters submitted to them for arbitration as was proper under the provisions of the agreement for submission, the parol testimony of one, or more, or all, of the arbitrators will not be received to impeach their award and its recitals."

The parties in this case stipulated for and obtained the judgment of arbitrators.

In my opinion, it would be most unfair to the arbitrators to order them to come into court to be subjected to grueling examinations by the attorneys for the disappointed party and to afford the disappointed party a "fishing expedition" in an attempt to set aside the award. To do this would neutralize and negate the strong judicial admonitions that a party who has accepted this form of adjudication must be content with the results. Firemen's Fund Ins. Co. v. Flint Hosiery Mills, Inc., supra, 4 Cir., 74 F.2d 533, 104 A.L.R. 556, certiorari denied 295 U.S. 748, 55 S.Ct. 826, 79 L.Ed. 1692; American Almond Products Co. v. Consolidated Pecan Sales Co., 2 Cir., 144 F.2d 448, 154 A.L.R. 1205, with annotation 1210–1215: Mutual Benefit Health & Accident Ass'n v. United Casualty Co., 1 Cir., 142 F.2d 390, certiorari denied 323 U.S. 729, 65 S.Ct. 65, 89 L.Ed. 585. And, especially is this true where the parties in solemn agreement agreed that the award "shall be binding upon the parties hereto, without any right of appeal from the award".

I cannot, therefore, consider the affidavits of two of the Arbitrators tendered by defendant in support of its motion. I will not require the Arbitrators to appear for the purpose of testifying in regard to their deliberations.

For the foregoing reasons, it is my opinion that the defendant's motions should, therefore, be denied, and

It is so ordered.

The award of the Arbitrators is confirmed and the Clerk of Court is directed to enter judgment upon it, and

It is so ordered.