EDWARD STONE

*v.*

ERASTUS B. BALDWIN *et al.*

*Opinion filed February 21, 1907—Rehearing denied April 18, 1907.*

1. ARBITRATION AND AWARD—*considering a legal opinion is not misconduct.* Either party to a submission to arbitration has a right to be represented by counsel before the arbitrators, and the fact that the latter, in the presence of both parties, considered a letter to one of such parties from his attorney, giving a legal opinion, is not misconduct.

2. SAME—*testimony of one arbitrator that he was guilty of misconduct cannot be heard to impeach award.* A statement by one arbitrator tending to show misconduct upon his part alone cannot be received to impeach the award, there being no other evidence of such misconduct.

3. SAME—*a mistake of law does not vitiate award.* Courts will not grant relief against an award upon the ground that the arbitrators have mistaken the law, where it does not appear that they have been guilty of fraud, partiality or misconduct.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

The superior court of Cook county entered a decree dismissing, for want of equity, a bill filed by appellant against appellees. That decree has been affirmed by the Appellate Court for the First District, and the record is brought to this court by appeal.

The following statement of facts is in great part that of the Appellate Court:

The amended bill upon which the cause was tried was one for an accounting between Edward Stone, the appellant, and Erastus B. Baldwin, one of the appellees, and seeking a lien, for such sum as might be found due, upon a lot improved by a dwelling house, in Cook county. This lot was bought by Baldwin with individual funds but improved by

him with partnership funds and the title taken in the name of his wife, Jane E. Baldwin, who died intestate, and her sole heirs, two daughters, Martha J. Barnes and Alice Peters, with their husbands, and Baldwin, were the defendants in the proceeding.

The material averments of the bill, as finally amended, were, that before May 1, 1869, one A. M. Baldwin, the appellee Erastus B. Baldwin, and appellant, Stone, had been engaged in the commission and produce business at Chicago under the name of Baldwin & Stone & Co., and that on said date that firm dissolved and E. B. Baldwin and Stone formed the co-partnership of Baldwin & Stone, continuing as equal partners; that E. B. Baldwin on May 1, 1869, contributed to the capital of the new firm his share of the available assets of the old firm, namely, $3163.36, and Stone contributed his share of those assets, $9039.15, and $250 besides, making $9289.15; that with said capital the firm continued in business from May 1, 1869, to May 1, 1904, when it was dissolved by mutual consent, and that all things connected with the firm have been settled except as afterward in said bill stated; that on account of the excess in capital contributed by Stone and excess of drafts from the profits of said business by Baldwin there was due at the dissolution of the partnership a large sum from Baldwin to Stone, but that there was no dispute between them except as to the allowance to Stone of interest on said excess capital, and that this difference was submitted to one Reeme and one Gray "to settle and determine from the proofs that should be presented as to such question of interest;" that appellant presented statements showing the respective contributions of capital and statements showing the respective amounts of money withdrawn; that the arbitrators called no meeting and took no proofs, but came together with Baldwin and Stone and asked complainant if it was true that in 1875 the firm of Baldwin & Stone had failed and that the capital had been entirely lost; that complainant said it was not true that

the capital had been lost, and that they then gave Stone twenty-four hours' notice to show by the books of said firm that said capital had not been lost; that the arbitrators returned in a day or two, when Stone informed them that the firm books for 1875 were not in his control and that no such question of loss of capital had been submitted to the said arbitrators; that the arbitrators insisted that the capital had been lost by the failure of 1875, and that Stone had lost the claim against Baldwin for excess capital, together with interest thereon; that the arbitrators were deceived by the false representations of Baldwin and that Baldwin prevailed on the arbitrators to exceed their powers; that Baldwin, pretending to act upon the arbitration, after setting aside for Stone the amount of the balance or excess of the money drawn from the firm by Baldwin over that drawn by Stone, took half the remainder of the assets, without reference to appellant's claim on account of his excess contribution to the capital and of interest due thereon; that all the acts and doings of the arbitrators were absolutely void; that it was with money derived from inheritance that Baldwin bought the lot described in the original bill; that he took title in the name of his wife, and then, with money drawn from the Baldwin & Stone business, made improvements by erecting a dwelling house costing $4000; that because Baldwin was indebted to Stone on account of excess capital and interest, the putting the property in his wife's name was fraudulent and void, and that Stone is entitled to a first lien on the lot and improvement and to a decree of foreclosure and sale to satisfy the lien.

To this amended bill Alice Peters and husband and Martha J. Barnes and husband answered, stating facts designed to show that Stone was not entitled to a lien on the lot in question, even if he was entitled to an accounting and decree against his late partner.

Baldwin filed an answer, by which he denied that there was no dispute between the partners at the dissolution of the

partnership except as to the allowance to Stone for interest on alleged capital, and averred that there were other differences and claims as to the settlement of the partnership matters, and particularly as to whether or not there should be any allowance to Stone for excess capital; that not being able to agree, Stone and Baldwin stipulated to submit themselves to the arbitration of H. C. Gray and J. B. Reeme, or to an umpire to be chosen by said Gray and Reeme if they should disagree, concerning all of the differences and the entire question of the settlement of the partnership affairs and the division of the partnership assets; that the arbitrators acted, and in May, 1904, made their award; that Stone and Baldwin accepted said award and agreed to fulfill it; that Baldwin, at the request of Stone, took upon himself the collection and distribution of the assets of the partnership in accordance with the award; that all payments provided for in the award have been made by Baldwin and accepted by Stone, and all the assets of the partnership to be divided according to the award have been collected and distributed according to the award, except two accounts amounting to $114.63; that Stone was bound by the award. The answer denied all the allegations of the bill concerning the arbitration which attacked its fairness or imputed improper conduct to the arbitrators. It also averred that the facts concerning the home bought for his wife were, that it was a reasonable gift to her when he was solvent and in prosperous circumstances; that the sum of $2000, only, of the money which went into the house was withdrawn from the partnership; that this was in June and July, 1884, and was from gains and profits and was with the knowledge and consent of Stone, who never objected thereto or claimed any lien upon or interest in the real estate.

Replications being filed to these answers, the cause was heard by the chancellor in June, 1905, on the depositions taken on the part of, and submitted by, Stone. The depositions were of the appellee E. B. Baldwin, of the appellant,

Edward Stone, and of Henry C. Gray and Josiah B. Reeme. Stone rested on the production of these depositions, and the cause was disposed of upon the pleadings and these proofs.

It is now urged that the superior court erred in holding that the award of the arbitrators was binding and conclusive, and in not finding that appellant was entitled to an accounting and a lien for such sum as should be found to be due him.

TAYLOR & MARTIN, for appellant.

OLIVER & MECARTNEY, and DOLPH, BUELL & ABBEY, for appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Stone and Baldwin entered into a co-partnership in 1869 and engaged in the commission business on the Chicago Board of Trade. They were to contribute an equal amount to the capital and were to share equally in the gains and losses. Stone's contribution on account of the capital of the firm was $9289.15; Baldwin's was $3163.36. This difference was never adjusted. In 1875 the firm failed. The country creditors were paid in full, but a settlement with the city creditors was made at 33⅓ cents on the dollar. Business was resumed without any further contributions to the capital of the firm and continued until the dissolution, on May 1, 1904. At that time Stone claimed that he should be reimbursed by Baldwin in the amount which he had paid to the capital in excess of one-half of the aggregate capital, and that he should have an allowance from Baldwin for interest on such excess from the time of the organization of the firm. Baldwin contended that the failure in 1875 wiped out the assets of the firm and that the capital was entirely lost, and that when they resumed business Stone no longer had a valid claim against either Baldwin or the firm on account of his payment to capital or on account of interest thereon.

There was also a question about two other items. A loss of $257 had been charged to Baldwin personally, and he claimed that it should be regarded as a firm loss and one-half thereof charged to Stone; and that there was an item of $1185 that should be charged to Stone's account that had not been so charged or that had not been properly brought forward on the ledger.

The partners selected Messrs. Reeme and Gray as arbitrators, and in case the two could not agree, they, the arbitrators, were to select an umpire. The finding of the arbitrators or the umpire ·was to be final, conclusive and binding upon the partners in reference to the matters submitted for decision. The contract of arbitration was oral. Stone says that the only question submitted was the question as to whether or not Baldwin should pay interest on that portion of the capital which Stone had contributed in excess of one-half of the capital, while Baldwin testifies that all matters in dispute were submitted. We think the preponderance of the evidence is with Baldwin on this subject. The arbitrators, to whom the contract was stated, swear that all things in· controversy between the partners were submitted. All questions which we have mentioned in the foregoing portion of the opinion were considered, Stone taking part in the hearing.

The arbitrators made a written award, finding that neither Baldwin nor the firm owed Stone anything on account of capital or interest thereon, and that the $1185 and one-half of the $257 should be charged to Stone. The arbitrators, Stone and Baldwin were together when the decision was made known to the partners. Stone then said, "That settles it;" and on the next day said to Baldwin that as the matter was settled they would have no further use for the books and papers of the firm and might as well destroy them. Baldwin assented, and the suggestion was acted upon.

It is urged that the arbitrators were guilty of such misconduct that their award should be disregarded.

At the first meeting of the arbitrators, which was held at the office of the firm, after the parties had made their statements, there being none present except the arbitrators and the partners, Baldwin produced a letter addressed to himself, written by John Milton Oliver, then and now one of his solicitors, which reads as follows:

"CHICAGO, *April 19, 1904.*
"*Erastus B. Baldwin, Esq., 501, 169 Jackson blvd., Chicago:*

"DEAR SIR—From an examination of the authorities we advise you as follows: In case of a partnership where there is no specific agreement to allow interest on the capital contributed by the various partners, no interest can be charged by one partner as against another. And where a partnership exists for a long series of years and no interest has been credited to the capital account of the partners or insisted upon by any partner, although at the inception of the partnership there may have been an agreement to allow interest on contributed capital.

"We likewise advise you that in case of a partnership where originally one partner contributed more than another partner to the capital and thereafter the firm makes a compromise settlement with its creditors, alleging its inability to pay a hundred cents on the dollar, and the creditors accept a compromise for less than a hundred cents, and the firm continues in business without contribution of capital by either partner, the partners thereafter are equal partners in all the assets of the partnership.

"Yours respectfully,
JOHN MILTON OLIVER."

The propositions contained in this document are abstract, ambiguous and misleading. That portion of the first paragraph beginning with the word "and" is meaningless, and the last paragraph of the letter, when applied to the facts of the case before us, would undoubtedly be understood by a layman as an opinion holding that after the failure Baldwin was not liable to Stone in any amount on account of capital. It was, however, submitted to the arbitrators as a communication from Baldwin's attorney. Stone knew of it and made no attempt to meet it. Either party had a right to be represented before the arbitrators by counsel. If Mr. Oliver had been present he would have had the right, had he seen fit to do so, to make the statement verbally that was contained in the letter, and we are not able to perceive that such state-

ment, whether oral or written, when received and considered by the arbitrators in the presence of both the parties, would constitute misconduct on their part.

When Reeme, one of the arbitrators, was testifying, he said that the arbitrators wanted a legal opinion as to what the condition of the partners would be if the original capital was lost at the time of the failure, and that they found such an opinion in the letter above set out, and then the witness continued, "I got the same opinion from someone else, too." It is said that it is thus shown that the arbitrator obtained an opinion from some person whom he consulted in the absence of Stone, and that the award is thereby vitiated. There is no evidence that any such opinion was obtained from any person other than Mr. Oliver, except the statement above quoted from Reeme's testimony. This testimony does not furnish legal basis for an attack upon the finding, as the testimony of an arbitrator showing that he alone has been guilty of misconduct will not be received to impeach an award. (*Claycomb* v. *Butler,* 36 Ill. 100; *Seaton* v. *Kendall,* 171 id. 410.) There is no other proof tending to show improper acts of Gray or Reeme.

The view of the arbitrators was, that inasmuch as the assets of the firm were entirely consumed at the time of the failure, in 1875, in paying the debts, both partners had lost all the capital they had invested, and there was no liability from Baldwin to Stone by reason of the fact that the former had contributed a smaller amount to the capital than the latter. While this view of the law was plainly wrong, still the parties selected their own tribunal, and that tribunal having acted, the courts will afford no relief, even though the arbitrators have mistaken the law, where it does not appear that they have been guilty of fraud, partiality or misconduct. *Pulliam* v. *Pensoneau,* 33 Ill. 375; *Sherfy* v. *Graham,* 72 id. 158; *White Star Mining Co.* v. *Hultberg,* 220 id. 578.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*