City State Bank of Chicago, Assignee of Harrison Parker, Trustee, Appellant, v. Charles Detrick, Appellee.

### Gen. No. 29,541.

1. ARBITRATIONS AND AWARDS—*jurisdiction to vacate dismissal and enter judgment on award.* Where, prior to the making by the plaintiff therein of a motion to dismiss a pending suit, the parties by stipulation and agreement entitled in the suit had agreed to submit the matter to arbitration, said agreement being irrevocable under the act governing arbitrations and awards, Cahill's St. 1923, ch. 10, sec. 3, the court had jurisdiction, after dismissing the suit on plaintiff's motion without notice to defendant, to vacate its order of dismissal and enter judgment on the award.

2. ARBITRATIONS AND AWARDS—*validity of award made on ex parte examination.* The findings and award of an arbitrator chosen by the parties to a pending suit to determine the matter in controversy were not invalid because made without opportunity to plaintiff to present evidence and arguments, where the matter in dispute was the amount of the surplus, undivided profits and reserve of a bank and there was nothing in the arbitration agreement to indicate that any evidence outside of the books, etc., of the bank was to be presented to the arbitrator, and the right to present written or oral arguments to the arbitrator was waived by correspondence between the respective attorneys before the arbitrator entered upon the performance of his duties and by plaintiff's failure to appear before the arbitrator after he had submitted his report and award and invited a hearing thereon.

3. ARBITRATIONS AND AWARDS—*conclusiveness of award.* Where there is no suggestion of fraud, partiality or misconduct on the part of the arbitrator chosen by parties to a suit to decide all questions of law and fact involved and to determine the controversy, the award should not be set aside though the arbitrator may have been mistaken in some of his conclusions.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Affirmed. Opinion filed April 3, 1925.

STEDMAN, KESLER & DINGLE, for appellant.

CATTELL & WALDRON, for appellee; GEORGE W. DAMMANN, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $859.69 against the plaintiff bank and in favor of defendant, rendered by the superior court of Cook county on June 27, 1924, and based upon an arbitrator's award.

The controversy arises out of a written contract, executed May 12, 1921, between Harrison Parker, trustee, first party, and the defendant Detrick, second party. Parker, as trustee, assigned all his interest in the contract to the plaintiff bank on September 5, 1921. On the date of the contract the "City State Bank," predecessor of the plaintiff bank, had a capital stock of $100,000, divided into 1,000 shares of the par value of $100 per share. Of these shares Detrick owned 902 and other parties the remaining 98 shares. In the first paragraph of the contract Parker, as trustee, agreed to purchase of Detrick all of the bank's capital stock that Detrick could deliver within 90 days at $165 per share, plus dividend accrued from January 1 to March 31, 1921, at the rate of 10 per cent per annum. In the second paragraph Detrick agreed to sell and deliver to Parker all of said

902 shares (less 10 shares to qualify him as a director in the bank) and to use his best endeavors to deliver the remaining 98 shares; and it was mutually agreed that, simultaneously with the delivery of the 892 shares, Parker would pay Detrick therefor $165 per share (plus the accrued dividend), of which price $100 per share should be paid in securities of the bank to be selected by Detrick from a list of those securities, attached as an exhibit to the contract; that, upon his being advised of Detrick's selection, he would purchase from the bank the securities so selected, at the price at which they were acquired by the bank plus accrued interest, and pay it therefor in Liberty bonds at the then market price, so that the bank would hold the bonds in lieu of the selected securities, upon Parker turning them over; and that thereupon Parker would deliver the selected securities to Detrick who would apply them on the purchase price. In the third paragraph it was agreed that the price paid for the stock "is based on the *surplus, undivided profits* and *reserve* of the bank," as shown by the bank's statement of March 31, 1921, attached to the contract as an exhibit. (This statement showed "Surplus, $10,000; Undivided profits, $12,361.35; Reserve, $16,279.52,"—the three items totaling $38,640.87.) And it was further agreed that, immediately upon the transfer of the stock, an examination of the bank should be made and a trial balance taken, as of the date of the contract; that if the "undivided profits and reserve" proved to be greater than that set forth in said statement of March 31, 1921, then Detrick should be paid by Parker "that proportion of the increase which the stock so turned over * * * (plus 10 shares) bears to the total amount of stock issued"; that if there was a decrease then Detrick should pay to Parker "the proportionate amount that the stock so turned over * * * (plus 10 shares) bears to the total amount of stock issued"; that, "in computing the undivided profits and reserve, in-

terest on all loans and expenses of the operation of the bank," as well as "interest due depositors on savings and otherwise," should be figured as of the date of the contract; and that "in compiling such trial balance said securities shall be valued at the cost of same to the bank." In the fifth paragraph Detrick agreed to remain temporarily as a director of the bank with the understanding that he might resign at any time and would immediately resign when requested by Parker; and it was further agreed that Parker should have the right to purchase of him said 10 shares of stock at the same price per share as said 892 shares. In the sixth paragraph it was agreed that Detrick would be employed as an officer of the bank for the term of one year at a salary of $3,000 for the period, —the sum to be paid him regardless of Parker's election to request Detrick's resignation.

On February 14, 1922, plaintiff, by Walter H. Eckert, its attorney, brought an assumpsit action (in which the judgment appealed from finally was entered) against Detrick, claiming large damages. The special count of the declaration (also containing the common counts) set forth *in hæc verba* the contract, mentioned the sale thereunder of the bank stock, directed attention to the provisions of the contract as to the price being "based on the surplus, undivided profits and reserve" of the bank as shown in said statement of March 31, 1921, and as to the agreed adjustment of the purchase price of the stock in case said surplus, etc., on May 12, 1921, was greater or less than as shown in said statement, and alleged that, upon examination of the bank being made as of May 13, 1921, "it was disclosed that the surplus and undivided profits and reserve of the bank were  *  *  *  $19,201 less than the amounts" as set forth in said statement; that said sum (not the proportional part) was due and owing to plaintiff from defendant; and that, although plaintiff, or Parker, as trustee, has com-

plied with all provisions and conditions of the contract, yet defendant, although often requested, has not paid to plaintiff said sum. In apt time the defendant's appearance by attorneys was entered in the suit. Thereafter by successive stipulations the filing of a demurrer or plea to plaintiff's declaration was extended from time to time. During the period negotiations were had as to submitting the controversy to arbitration,—both parties recognizing that an intricate accounting of the bank's affairs was involved, which could better be made and determined by a bank auditor than by a jury. Finally it was agreed that the issue should be submitted for final determination to R. H. Brunkhorst, auditor of a Chicago bank, as arbitrator, and on October 27, 1922, a written agreement to so submit the controversy was signed by the parties. Attached to the agreement, and entitled in the pending suit but not then filed, was a stipulation, signed by both parties, that "the subject matter of the above entitled cause may be submitted to arbitration pursuant to the agreement hereto attached, and that any orders which may be necessary shall be entered according to the terms of the arbitration agreement." Also attached to the agreement was the arbitrator's written consent to act as such in accordance with its provisions, and his oath that he would "faithfully and fairly hear, examine and determine" the controversy and "make a just and true award according to the best of his understanding and according to the stipulation and agreement of said submission." Also attached to the agreement as exhibits were a copy of the contract of May 12, 1921, and a copy of Parker's assignment of his interest in the contract to the bank. After recitals in the agreement (a) that "a controversy has arisen" between the parties "as to the *amount of the surplus, undivided profits and reserve* of the bank on May 12, 1921, each of the respective parties claim-

ing that under the terms and provisions of said contract certain sums of money are due," (b) that to enforce its claim the bank had started said pending suit, and (c) that "each of the parties are desirous of having whatever differences may exist under said contract settled by arbitration," it was agreed as follows:

"That the above mentioned controversy be submitted to arbitration, and that R. H. Brunkhorst, auditor, etc., be and he is hereby appointed sole arbitrator with full power to pass on all questions of law and fact, and to finally determine the controversy. * * * . He shall immediately upon taking the oath in form hereto attached proceed to examine said contract and shall have free access to all books, papers and documents of said bank, and shall make the necessary examination of the assets of the. * * * bank * * * to determine the *surplus, undivided profits and reserve* of the bank as of May 12, 1921, and, from said examination, shall ascertain the amount due either of the respective parties hereto under the terms and provisions of the contract and shall, as soon as possible, furnish itemized report in writing of his conclusions to the respective parties hereto, together with a certified copy of his audit."

It was further provided in the agreement that the parties would conform "with all the findings of the arbitrator, which shall be final and conclusive on each"; that each would pay one-half of the costs and expenses of the arbitration; that in case of failure of either party to so conform the other party might "forthwith submit the finding of the arbitrator to the judge of the Superior Court * * * to whom the above named suit * * * is or may be assigned, and said judge shall forthwith enter a judgment in accordance with said award"; and that either party "may present to the arbitrator, either individually or through its or his attorney written or oral arguments in support of its or his contentions relative to the controversy."

During November, 1922, and before the arbitrator commenced his audit of the bank's books, etc., several letters passed between the respective attorneys as to whether the parties should submit statements to the arbitrator of their respective claims, but the correspondence discloses that it was agreed that such statements should not be submitted. Plaintiff furnished a room at the bank for the convenience of the arbitrator, also some of its employees to assist him, and he there did practically all of his work, and on January 13, 1923, he wrote each of the respective attorneys a letter, stating: "Enclosed is a copy of my rulings and awards. * * * I think you will understand them. However, if additional explanations or reasons are desired I will be glad to meet the parties to the controversy in conference, or have them submit written questions for reply." The report and award is an exhaustive one, to which is attached an elaborate audit duly certified. In the report there are stated various rulings as regards provisions in the contract and the reasons for such rulings. In the audit are set forth detailed statements of the assets and liabilities of the bank, as of March 31, and as of May 12, 1921, of the adjustments of interest and of the bank's securities, as well as itemized statements of allowances made to each party. The "recapitulation" is as follows:

"Debit to Party of Second Part (Detrick).

| | |
|---|---:|
| Allowed party of first part | $16,269.58 |
| Allowed party of second part | 11,424.45 |
| Difference | 4,845.13 |
| 902-1000ths (of this difference) debited to party of 2nd part | 4,370.31 |

Credit to Party of Second Part

| | |
|---|---:|
| 892-1000ths of 10% dividend | $ 2,230.00 |
| Salary allowed | 3,000.00 |
| Total | $ 5,230.00 |

Less Debits (as above)..................$ 4,370.31

Due to Party of Second Part (not including
  furniture, fixtures & equipment, not valued) $859.69''

About a week after the mailing of the arbitrator's report as aforesaid, Mr. Eckert ceased acting as attorney for the bank, and in February, 1923, Frank E. Dingle became its attorney in the matter. The substitution was not made in the pending suit until April 19, 1923. Up to this time no request was made of the arbitrator for a hearing, or for the presentation of arguments, by the bank or its attorney. On April 25, 1923, without notice to Detrick or his attorneys, plaintiff, by Dingle, appeared in court and moved to dismiss the pending suit, which motion was granted. On the afternoon of the same day Detrick's attorney, becoming advised of this action, appeared and moved the court to set aside the order of dismissal and for leave to file all arbitration papers including the report and award in said suit, and on April 26, filed said papers without leave. The motion was several times continued and after several hearings the court, on June 30, 1923, set aside the dismissal and allowed the filing of the papers, and they were filed again. On July 12, 1923, by leave of court, exceptions to the findings and rulings of the arbitrator and to his award were filed. On June 27, 1924, after hearing evidence and arguments, the court overruled said exceptions, and entered the judgment appealed from.

It is contended by plaintiff's counsel that, after the dismissal of the pending suit on plaintiff's motion without notice to defendant, the court erred in vacating the order of dismissal and allowing the findings and award of the arbitrator to be filed, because plaintiff was entitled to dismiss its suit at any time before verdict or finding, no set-off having been filed, and, hence, the court was without jurisdiction to afterwards enter any judgment on the award in said suit. We cannot agree. While it is true that, as a general

rule, a plaintiff in a lawsuit, no set-off having been filed, may take a nonsuit at any time before the jury have retired from the bar, or the case is submitted to the court for final decision (*Howe v. Harroun*, 17 Ill. 494, 498; *Stanton v. Kinsey*, 151 Ill. 301, 305; *Daube v. Kuppenheimer*, 272 Ill. 350, 353) yet in the present case, long prior to the making of plaintiff's motion to dismiss, the parties by stipulation and agreement, entitled in the pending suit, had agreed to submit the controversy in question in said suit to arbitration, and such agreement (a contrary intention not being expressed therein) is irrevocable under our present Act governing arbitrations and awards. (Cahill's St. 1923, ch. 10, sec. 3; *White Eagle Laundry Co. v. Slawek*, 296 Ill. 240, 243, 244; *Cocalis v. Nazlides*, 308 Ill. 152, 155.) It sufficiently appears, under the provisions of other sections of the Act, that the court had jurisdiction to enter the judgment on the award that it did enter.

It is also contended that the findings and the award of the arbitrator are null and void, (a) because they were made without any opportunity being given to plaintiff to present evidence bearing on the questions to be decided or to present arguments, and (b) because the findings and award are at variance with and in violation of the terms of the contract between the parties, which was attached as an exhibit to the stipulation and agreement to submit to arbitration. Again, we cannot agree. As to the first point, we fail to find in the agreement to arbitrate any statement that any evidence, outside of the books, etc., of the bank, was to be presented to the arbitrator. These, with the assistance of plaintiff's employees, were presented to and examined by him and an audit thereof made. It is apparent from the arbitration agreement that the main and ultimate facts to be determined by the arbitrator from said books, etc., were the "surplus, undivided profits and reserve" of the bank, both as of March 31, 1921, and as of May 12,

1921, and, that being ascertained, which of the parties owed to the other any net sum under the terms of the contract of May 12, 1921, as construed by the arbitrator. He was given "full power to pass on all questions of law and fact," and to finally determine the controversy. And, although the arbitration agreement provided that both parties might present written or oral "arguments" to the arbitrator in support of their contentions, yet we think it clearly appears that the presentation of arguments by plaintiff was waived, as held by the trial court during the hearing on plaintiff's exceptions to the award. This is shown not only by the correspondence between the attorneys of the parties before the arbitrator entered upon the performance of his duties, but also by the action of the parties, after he had submitted his report and award to said attorneys and invited a hearing thereon. Plaintiff then had an opportunity of arguing to the arbitrator wherein, if at all, the findings and the award were erroneous, but instead of doing this it made the attempt to dismiss the entire matter out of court. And we cannot say, after a review of the arbitration agreement, the contract of May 12, 1921, and the arbitrator's findings and award, that the award is substantially at variance with the terms of the arbitration agreement and said contract. There is no suggestion in the record of any fraud, partiality or misconduct on the part of the arbitrator. Even if it should be considered that the arbitrator was mistaken in some of the conclusions found in his rulings, yet the award should not be set aside on that account because the parties made him the umpire to decide all questions of law and fact involved and to determine the controversy. "Courts look with favor upon arbitration as a method of settling disputes and every presumption in favor of the validity of an award will be indulged." (*Brown v. Atwood,* 224 Ill. App. 77, 84; *Podolsky v. Raskin,* 294 Ill. 443, 450; *Cocalis v. Nazlides,* 308 Ill. 152, 156.) In *Stearns v. Cope,* 109

Ill. 340, 348, it is said: "It is sufficient if the award is responsive to, and is fairly embraced within, the submission. The awarding of a gross sum of money in such case will be presumed to be a complete adjustment of all matters of difference embraced in the submission, and this view is well sustained by authority." In *Stone v. Baldwin*, 226 Ill. 338, 345, it is said: "The parties selected their own tribunal, and that tribunal having acted, the courts will afford no relief, even though the arbitrators have mistaken the law, where it does not appear that they have been guilty of fraud, partiality or misconduct."

Our conclusion is that the judgment appealed from, based as it is upon said award, should be affirmed, and it is so ordered.

*Affirmed.*

FITCH, P. J., and BARNES, J., concur.