## 12486

### LINDER *ET AL.* v. COWPENS COTTON OIL COMPANY

#### (144 S. E., 73)

1. APPEAL AND ERROR—NOTICE OF INTENTION TO APPEAL, SERVED FOUR DAYS AFTER REMITTITUR, PURSUANT TO ORDER GRANTING NEW TRIAL NISI, HELD TIMELY (CODE CIV. PROC. 1922, § 646).—Notice of intention to appeal, served four days after remittitur, in accordance with order granting a new trial *nisi, held* served within time, under Code Civ. Proc. 1922, § 646, though more than ten days after order granting new trial.

2. ACCOUNT—EVIDENCE IN ACTION TO RECOVER FOR COTTON PLACED IN DEFENDANT'S CARE AND FOR ACCOUNTING FOR PROCEEDS REQUIRED SUBMISSION TO JURY.—Evidence in action to recover for the value of a certain lot of cotton alleged to have been placed in the care and possession of defendant in trust for plaintiff's testator and for accounting for proceeds of sale thereof *held* sufficient to require submission to jury.

3. A<small>PPEAL AND</small> E<small>RROR</small>—E<small>XCEPTION TO</small> M<small>ISSTATEMENT OF</small> I<small>SSUES</small> W<small>ILL</small> <small>BE</small> O<small>VERRULED</small>, U<small>NLESS</small> C<small>OURT'S</small> A<small>TTENTION WAS</small> C<small>ALLED</small> T<small>HERETO.</small> —Exception relative to misstatement of the issues by Court will be overruled, where counsel failed to call Court's attention thereto.

4. E<small>VIDENCE</small>—C<small>OURT</small> C<small>ANNOT</small> H<small>OLD AS</small> M<small>ATTER OF</small> L<small>AW THAT</small> O<small>FF-</small> G<small>RADE</small> C<small>OTTON WAS</small> W<small>ORTH</small> O<small>NLY</small> 14 C<small>ENTS ON</small> D<small>ATE</small> P<small>RICE OF</small> C<small>OT-</small> <small>TON WAS</small> 21.75 C<small>ENTS.</small>—Supreme Court cannot hold as matter of law that off-grade or yellow cotton was worth only 14 cents per pound on date that price of cotton was 21.75 cents, even though it might take judicial notice that such price had reference to middling cotton.

5. I<small>NTEREST</small>—P<small>LAINTIFFS</small>, I<small>F</small> E<small>NTITLED TO</small> R<small>ECOVER</small> P<small>ROCEEDS OF</small> C<small>OT-</small> <small>TON</small> P<small>LACED WITH</small> D<small>EFENDANT</small>, W<small>ERE</small> E<small>NTITLED TO</small> I<small>NTEREST</small> (3 C<small>IV.</small> C<small>ODE</small> 1922, § 4273).—Under 3 Civ. Code, 1922, § 4273, plaintiffs suing for value of cotton placed in trust with defendant, if entitled to recover, were entitled to interest.

6. A<small>PPEAL AND</small> E<small>RROR</small>—E<small>XCEPTION</small> T<small>HAT</small> V<small>ERDICT WAS</small> C<small>ONTRARY TO</small> L<small>AW AND</small> P<small>REPONDERACE OF</small> E<small>VIDENCE IS</small> T<small>OO</small> G<small>ENERAL.</small>—Exception that verdict was contrary to the law and the preponderance of the evidence in the case is too general for consideration.

Before S<small>EASE</small>, J., Spartanburg, January, 1926. Affirmed.

Action by Mrs. M. J. Linder and others, as executors of the last will and testament of H. C. Linder, deceased, against the Cowpens Cotton Oil Company. Judgment for plaintiffs, and defendant appeals.

*Messrs. Perrin & Tinsley,* for appellant, cite: *Charge on facts, new trial proper:* 81 S. C., 374. *As to time of serving notice of intention to appeal:* Sec. 646, Code Proc.; 82 S. C., 432.

· *Messrs. Nicholls, Wyche & Byrnes,* for respondents, cite: *Failure to serve notice of intention to appeal within time required by statute loses such right:* Sec. 646, 650, Code Proc; 20 S. C., 581; 77 S. C., 155; 108 S. C., 73; 91 S. C., 399; 84 S. C., 536; 46 S. C., 292. *Where testimony to sustain verdict, refusal of trial Judge to grant new trial not appealable:* 80 S. C., 166; 25 S. C., 174. *Finding of fact by jury conclusive:* 31 S. C., 443; 75 S. C., 150; 70 S. C., 211.

*No charge on facts here:* 81 S. C., 374; 61 S. C., 17; 71 S. C., 142; 73 S. C., 379; 72 S. C., 350.

July 16, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiffs Mrs. M. J. Linder et al., as executors of the last will and testament of H. C. Linder, late of the county of Spartanburg, this State, was commenced against the defendant, Cowpens Cotton Oil Company, a corporation, in the Court of Common Pleas of said County, by service of summons and complaint, September, 1922. The defendant having demurred to the complaint, and the demurrer having been sustained, with provision that the plaintiffs be allowed to file an amended complaint, and amended complaint was served on the defendant May 25, 1925. The purpose of the suit was to procure judgment against Cowpens Cotton Oil Company for the value of a certain lot of cotton, consisting of approximately 15,874 pounds good middling lint cotton, alleged to have been placed in the care and possession of the said Cowpens Cotton Oil Company, by the said H. C. Linder from time to time, between the years 1916 and 1920, in trust with the Cowpens Cotton Oil Company for the said H. C. Linder. The plaintiffs allege, further, on information and belief, that the defendant has sold the said cotton for a large sum of money without the knowledge or consent of H. C. Linder or the plaintiffs, and has refused to account to the plaintiffs for the proceeds of said sale, together with interest at the rate of 7 per cent. per annum, although demand has been made for the same and "plaintiffs demand judgment; (1) for an accounting between the parties herein to ascertain the amount due plaintiffs by defendant; (2) for judgment against the defendant for the amount found due on said accounting; for the costs of this action; and for such other and further relief as may be equitable and just."

In its answer defendant denied the material allegations of the complaint, and in addition set up the defense "that the alleged contract set forth in the complaint is void, because it shows on its face that it is wholly without consideration," and also set up the further defense that the alleged obligation on the part of the defendant was *"ultra vires and void."*

The case was tried before his Honor, T. S. Sease, presiding Judge, and a jury, June 1, 1925, resulting in a verdict for the plaintiffs in the sum of $4,000. On motion by defendant for a new trial, his Honor, Judge Sease, filed an order granting a new trial *nisi;* that is, ordered a new trial, unless the plaintiffs should within ten days from the issuing of said order remit on the record $500 of the verdict, leaving the amount of the verdict $3,500. On the date of the issuing of said order, January 14, 1926, the clerk of Court of Spartanburg County notified, in writing, the attorneys for the plaintiffs and attorneys for defendant of the filing of said order. On January 24, 1926, the plaintiffs' attorneys remitted on the record the amount of $500, in accordance with the provisions of said order, and on the 28th day of January, 1926, the defendant served upon plaintiffs notice of intention to appeal to this Court from the verdict rendered in the original case, and, as reduced by entry on the record pursuant to the said order of Judge Sease, issued on the motion for a new trial. Pursuant to said notice of intention to appeal the defendant duly served exceptions, imputing error to his Honor in the particulars set forth under the several exceptions, to which reference will hereafter be made.

The question to be considered at the threshold of the case is the question arising out of the motion made by respondent at the hearing before this Court to dismiss the appeal upon the following grounds:

"Because the Supreme Court has no jurisdiction to hear the appeal in this case, in that it appears in the printed case that notice of intention to appeal to the Supreme Court from

the judgment and the order of the Circuit Judge, Hon. T. S. Sease, was not served within the time required by the statute."

The transcript of record shows that the motion for a new trial was made and heard during the term of Court at which the trial was had, but his Honor, Judge Sease, did not render his decision and issue an order thereon until January 14, 1926, on which date his order, of the purport above stated, was filed. On January 28, 1926, notice of intention to appeal was served on attorneys for plaintiffs respondents. Respondents take the position that under Section 646, Code of Civil Procedure, Vol. 1, the notice of intention to appeal was not served within the required time, and that, therefore, this Court is without jurisdiction in the case. We do not agree with this contention. The order of Judge Sease, passing upon the motion for a new trial, ordered a new trial, unless the plaintiffs should within ten days remit upon the record the amount of $500 of said verdict. Plaintiffs did remit on the record the said amount of $500, but did not do it until on the last day, the night of the last day (which was on Sunday night), provided in said order for preventing the operation of the order granting a new trial. In our opinion, such construction was not intended to be given to the section of the Code referred to. It was not until the plaintiffs remitted on the record the amount specified, and thereby prevented the operation of the order granting a new trial, that the defendant desired to appeal or had any need to serve a notice of intention to appeal. This act on the part of the plaintiffs, remitting on the record $500 of the amount of the verdict, was January 24, 1926, and on January 28th the defendant served notice of intention to appeal to this Court, " both from the verdict rendered in the original case and as reduced by the order of Judge Sease." In our opinion the notice was served within time and the Court will consider the appeal on its merits.

As stated by counsel for appellant, the exceptions raise five issues for determination by this Court, namely:

"First, the refusal to direct a verdict; second, error in the Judge's charge; third, refusal of new trial; fourth, remarks of the presiding Judge; and, fifth, the verdict is contrary to the law of the case and the preponderance of the testimony."

The first issue, refusal to direct a verdict for the defendant, is raised under appellant's first three exceptions. Under the first exception appellant alleges:

"That there was not a scintilla of testimony to show that the defendant had sold any of the coton described in the complaint, nor that it had received large sums therefor, and not accounted to H. C. Linder, deceased, for the proceeds."

Under the second exception the appellant alleges:

"That there was not one scintilla of testimony to show that the defendant sold any of the cotton belonging to H. C. Linder, deceased, without his knowledge or consent, or without having had with him a complete settlement therefor."

Under appellant's third exception it is alleged:

"That there was not a scintilla of evidence to show that defendant received any benefits whatsoever from the cotton alleged to have been left at its gin, and under the Judge's charge, in which he construed the alleged contract to be without consideration, it was incumbent on said plaintiffs to show such benefit before they were entitled to recover anything."

For these alleged reasons the appellant contends it was entitled to a directed verdict.

In deciding this issue it will be necessary to review the testimony at length, and we shall make reference to so much of same as is pertinent to the question involved.

Mrs. M. J. Linder, widow of H. C. Linder, deceased, and one of the plaintiffs herein, during the course of her testimony, testified in substance that, as a result of what her

deceased husband told her a short time before his death, after her husband's death she looked among his papers and found certain cotton bills in an envelope, 56 in number. She spoke of them as cotton bills, but from other testimony in the record they were receipts; at least part of them were. Being shown the papers by her attorney, she identified the same as being some of the bills which she had found, and said that some of them were Mosely Bros.' and some Cowpens Cotton Oil Company's. After finding these papers, she stated she had a conversation with Mr. M. A. Mosely, who was president of the Cowpens Cotton Oil Company. The conversation was at the home of Mrs. Linder; Mr. Mosely having come to her home in response to a letter written him by Mrs. Linder. She states that in the course of the conversation with Mr. Mosely she told him that she wanted him to pay off the interest on some notes, amounting to $4,200, and that Mr. Mosely counted the interest and paid the interest to her, and said that he would like to keep the money awhile longer for the reason that he was not able to pay it, evidently referring to the principal sum, for he paid her the interest. She testified:

That she told him that so far as she knew he could keep it awhile longer, and that she then talked to him about this cotton, and told him that she wanted to sell him the cotton that was at his place, and that he replied, " 'Lord have mercy, Mrs. Linder,' and repeated, 'Lord have mercy, Mrs. Linder; I am not able to buy it.' I told him that he had it there and that he could make some money on it now, that he had it at his place and he could keep it as cotton was going up; he said he wished he was able, but he was not. He said, 'Well, Mrs. Linder; I am sorry that I cannot buy it, but you send the boys over.' "

Mrs. Linder further testified that she sent her two sons, Gory and Andrew, to see Mr. Mosely; that later she had another conversation with Mr. Mosely when he went down to her home and wanted to see the bills she had referred to.

She stated in her testimony that she showed them to him and that he looked over them, and said, "Mrs. Linder I think I have settled with Mr. Linder up until 1919." She added that she did not say anything; that he "just counted on and he picked out 35 bills, and he said that he owed for them, 35 bales, and he said he thought that was all." She then testified:

"When I showed him these receipts, he did not deny that they were his, but he said that he only owed for 35 bales. He put these bills down on a piece of paper, the number of them, one on down, and, when he got through, I asked him how many, and he said 35, he counted."

The bills or receipts were put in evidence. She further testified that she had never received settlement for the cotton; that after the conversation referred to she went to see Mr. Mosely several times, and sent her boys to see him, but was not able to get any satisfaction from him. She stated that she went to see him at his office in the bank, and that Mr. Mosely got out some "old receipts" of some kind, and said, "Mrs. Linder, I think I have good receipts here against the cotton," and that she replied, "Mr. Mosely, do turn that cotton over; I don't want to go to Court." She further testified in connection with this interview at the bank:

"The only satisfaction he gave me was that he said he thought he had paid it off; that he had some receipts there; he never did find them, though. He did not show them to me, nor have I ever seen them. As executrix of the estate of my husband, I returned these bales of cotton as the property of my husband and they were appraised with the notes and everything else."

On cross examination Mrs. Linder testified:

"I think the number of bales of cotton covered by those receipts against the Cowpens Cotton Oil Company amount to 56. The notes of H. C. Linder against the Cowpens Cotton Oil Company aggregated $4,200, and were for money borrowed. Mr. Mosely asked me to let him keep that money

when he paid the interest, and never said anything about that being for cotton. He came down home and taken the bills out and acknowledged that there were 35 bales; that there were 35 bales of cotton at his place."

Mrs. Linder identified a check for the sum of $4,200, which she stated was given to her in payment of the notes which the estate held against the defendant, and also a check given in payment of the interest on these notes. She also identified some other checks given to H. C. Linder, deceased, which are not in issue. Mrs. Linder further testified that her deceased husband had some cotton stored at his home; about 72 bales.

J. G. Linder, a son of Mrs. Linder, testified to having heard part of the conversation between Mr. Mosely and his mother, and corroborates his mother as to the part of the conversation he heard, and testified that Mr. Mosely stated that he had at his place in storage 35 bales of cotton, described in the bills in question referred to.

The witness T. P. Tisdale testified that he lived on Mr. Linder's place, and identified one of the receipts introduced in evidence as cotton delivered by him to the defendant, stating that the cotton was rent cotton.

The witness J. G. Lovelace testified that he rented land from Linder and delivered to the defendant for the Mr. Linder rent cotton for the year 1918, consisting of 8 bales. This witness also testified:

"Mr. Linder told Mr. Mosely I would bring my other cotton there, and Mr. Mosely said he would take care of it."

A. Ward, another renter of Mr. Linder, testified that he carried some cotton to the defendant for Mr. Linder and got receipts for the same.

It was admitted that, if Mr. Hugh Gentry, an employee of J. A. Leathers & Co., were present, he would testify that on August 19, 1922 (day on which demand was made for the cotton), spot cotton in Spartanburg was worth 21.75 cents.

Three witnesses testified for the defendant, M. A. Mosely, Ben Davis, and T. P. Quinn.

The witness Ben Davis simply testified as to hauling cotton from Mr. Linder's home to the oil mill, and as to Mr. Linder saying he was unable to go with him, as he had done in the past to haul cotton "backward and forwards."

The witness M. A. Mosely, the president of Cowpens Cotton Oil Company, defendant herein, in the course of his testimony denied having made the statements and admissions which Mrs. Linder and her son testified he had made concerning all of the material matters involved in the case, and stated that the notes going to make up the $4,200 which he paid to Mrs. Linder represented the purchase price of the cotton in question; that he bought from Mr. Linder the cotton in question and instead of paying cash for it he gave Mr. Linder notes for it; that having paid to Mrs. Linder $4,200, the amount of the notes, he denied owing Mr. Linder's estate anything.

Mr. T. P. Quinn, a witness for the defendant, testified that he was a brother of Mrs. Linder, and that during the year of Mr. Linder's death he went with Mr. Linder to Mr. Mosely to get a settlement from Mr. Mosely for the cotton in question; that at that time Mr. Mosely made a complete settlement with Mr. Linder for this cotton; that he saw Mr. Mosely give to Mr. Linder a check in settlement for the cotton; and that the number of bales settled for was between 30 and 40. Mr. Quinn also testified that he at the same time received a check from Mr. Mosely for cotton the defendant held for him; that he did not know what he did with his check saying that he might have it yet, and that he might have given it to some one.

Why Mr. Quinn so readily volunteered to furnish such information against the interest of his sister is not easily explained, without suggesting some wrongful motive. It is not likely that the testimony was of much, if any, benefit to the defendant before the jury, for the reason that it did

not coincide with that of the president, Mr. Mosely. Mr. Mosely testified that he gave to Mr. Linder notes from time to time as he bought the cotton, and that he took up the notes by paying the money to Mrs. Linder, as executrix, some time after Mr. Linder's death, paying to her first the interest owing on the notes, and later paying to her at his bank the sum of $4,200, the full amout of the principal sum of the notes, and the canceled checks were introduced in evidence; whereas, Mr. Quinn testified that some time during the year of Mr. Linder's death Mr. Mosely made complete settlement with Mr. Linder for the cotton, and paid him by giving a check for the same. Mr. Quinn testified very positively as to this. It is thus seen that there was a direct conflict in the testimony of the president of the defendant company and that of the witness Mr. Quinn on a very material matter.

There was also a sharp conflict in the testimony given by the witnesses for the plaintiffs and that given by the witnesses for the defendant. If the testimony given by Mrs. Linder and her son is to be believed, then the Cowpens Cotton Oil Company, by its president, Mr. Mosely, admitted the material facts alleged in the complaint, and these facts, together with the other facts testified to by Mrs. Linder and her son, if believed, made out a complete case for the plaintiffs.

We are, therefore, of the opinion that his Honor, the presiding Judge, properly refused the motion for direction of a verdict; and the exceptions raising this issue are overruled.

Under the fourth exception the appellant raises an issue as to the Judge's charge, to-wit:

"That his Honor erred in charging the jury as follows: 'The plaintiffs by their complaint bring an action against the Cowpens Cotton Oil Company for cotton had and received, and the defendant denies it had any cotton or received any,' the error being that this is an incorrect statement of the issue made by the complaint, which specifically

alleges a contract or trust agreement between H. C. Linder, deceased, and defendant, and alleges a breach of the contract by the defendant in the unlawful sale of said cotton."

While the facts alleged in the amended complaint might have been stated more definitely, under the allegations of the amended complaint, a synopsis of which appears in the statement given at the beginning of this opinion, when considered in connection with defendant's answer and the testimony in the case, we think his Honor was warranted in instructing the jury that the issue between the parties was as charged. Furthermore, it was the duty of counsel to call the Court's attention to a misstatement of the issues, and so far as the record discloses, appellant's counsel did not do this. The exception is therefore overruled.

The third issue, refusal of motion to order a new trial, is alleged under the fifth and sixth exceptions. Under the fifth exception, appellant imputes error to his Honor, the presiding Judge, "in not granting the motion for a new trial rather than a new trial *nisi,*" alleging that the judgment allowed to stand, the sum of $3,500, "was far in excess of the value of the cotton shown by the plaintiffs to have been left at the defendant's gin for H. C. Linder, deceased, accepted at its full face value the weights shown on the alleged receipts." Under the sixth exception the defendant alleges that:

"The verdict of the jury showed on its face that it was the result of caprice and prejudice, in that the amount was far in excess of the value of all the cotton represented by all the alleged bills or receipts introduced by plaintiffs, and disregarded absolutely the fact that only 7,446 pounds of cotton, for which alleged bills were introduced, was left at defendant's gin for H. C. Linder, deceased, and that of this amount 1,780 pounds were 'yellow' or 'off grade,' the price of good middling cotton being shown to have been 21.-75 cents per pound."

As pointed out in our consideration of the first, second, and third exceptions, there was ample testimony to support a verdict for plaintiffs. But appellant takes the position, as appears from appellant's brief, that, even if the testimony be construed to support a verdict for the plaintiffs, in no event can it be construed to support a verdict for a greater sum than $2,893.48. In this connection appellant calls attention to the fact that it appears from the exhibits introduced in evidence that between the dates of December 5, 1916, and March 30, 1920, inclusive, H. C. Linder, or some of his tenants, left with the defendant, in the town of Cowpens, 31 bales of cotton, aggregating 14,754 pounds, and contends that the bills or receipts for the cotton contain certain notations to the effect that 9 of the bales of cotton were "yellow" or "off-grade," the aggregate amount of the "off-grade" and "yellow" being, according to appellant's contention, 3,-931 pounds. Appellant further contends that, while the price of cotton on the date named, August 19, 1922, in the city of Spartanburg, was conceded to be 21.75 cents, the "yellow" and "off-grade" cotton should have been valued for only 14 cents per pound, making the total value of the "yellow" and "off-grade" $550.34, and the balance of the cotton 10,-823 pounds, calculated at 21.75 cents, $2,343.14, making the total value of the cotton, according to appellant's position, $2,893.48. Appellant, therefore, takes the position that his Honor, the presiding Judge, instead of reducing the amount of the verdict to $3,500, the same should have been reduced to $2,893.48.

We do not agree with this position. In the first place, we find no testimony in the records as to the value of "off-grade" and "yellow" cotton, and this Court cannot hold as a matter of law that "off-grade" or "yellow" cotton was worth only 14 cents per pound on the date in question when the price of cotton was conceded to be 21.75 cents. While this Court might take judicial notice of the fact that, when it was stated that the price of cotton

was 21.75 cents, the statement had reference to middling cotton, this Court cannot hold, in the absence of any testimony, that "yellow" or "off-grade" cotton was worth only 14 cents per pound. In the absence of any testimony on the question, it was proper for the members of the jury to use their common sense and experience as business men in ascertaining the value of the cotton in question, that is, the "yellow" or "off-grade," the price of the other being admitted to be 21.75 cents. Also, according to our inspection of the bills or receipts, they indicate only 1,288 pounds of "yellow" and 1,679 pounds of "off-grade" cotton. Further, while the bills or receipts to which appellant refers only account for 31 bales, as stated by appellant, there was testimony introduced tending to show that the defendant, by its president, admitting having in hand 35 bales of cotton, and owing the plaintiffs for the same. There was also some testimony tending to show that 56 bales were stored with the defendant. Furthermore, if the plaintiffs were entitled to recover, they were clearly entitled to interest. See the following cases: *Ancrum v. Stone,* 2 Speers, p. 594. *Woods v. Cramer,* 34 S. C., 518; 13 S. E., 660, and cases cited therein; also Section 4273, Vol. 3, Code 1922.

According to our view of the case, there was ample evidence to support a verdict for the plaintiffs for $3,500, the amount to which his Honor, Judge Sease, reduced the verdict. This issue is therefore decided against appellant's contention.

The fourth issue presented on the appeal is with reference to remarks of the presiding Judge, based on the seventh exception. From an examination of the record, including the order of his Honor, Judge Sease, issued on the motion for a new trial, in which order his Honor explains the remarks complained of, we are satisfied that the remarks were not prejudicial, and that the defendant had a fair and impartial trial.

The fifth issue which appellant presents is based on the eighth exception, to-wit: "That the verdict was contrary to the law and the preponderance of evidence in the case." This exception is too general for consideration, but, waiving the objection, it is sufficient to state that, for the reasons assigned in our consideration of the foregoing exceptions, this exception cannot be sustained.

The exceptions are overruled, and it is the judgment of this Court that the judgment of the Circuit Court be and it is hereby affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER concur.