13861

BREEDIN v. S. & H. X-RAY CO.

(174 S. E., 913)

*Messrs. Hood & Hood* for appellant,

*Messrs. H. C. Miller* and *A. H. Dagnall,* for respondent,

June 1, 1934.

The opinion of the Court was delivered by Mr. Justice Stabler.

The plaintiff in this case, who is a physician and surgeon, resides at Anderson, S. C., where he operates a private hospital. The defendant company is a Georgia corporation,

with its principal office in the city of Atlanta, and is engaged in the business of selling and distributing x-ray equipment. The complaint alleges: "That heretofore, to wit, the twenty-first day of November, 1929, plaintiff entered into an agreement with the defendant in the City of Anderson, South Carolina, wherein he agreed to purchase and the defendant agreed to sell to him accordingly to specifications certain x-ray equipment at the price of thirty-two hundred twenty-one and 25-100 dollars ($3,221.25) to be delivered to plaintiff in the City of Anderson, South Carolina, and there installed and demonstrated by defendant until the plaintiff acquired the necessary knowledge of its operation, the legal title thereto, however, to remain in the defendant until said x-ray equipment was fully paid for. That among other things it was specifically agreed that the defendant was to furnish to plaintiff as part of this equipment '1 Wappler Tilt Table, used, equipped with rail mounted tube stand, fluoroscopic horizontal attachment and Tube Holder, Fluoroscopic Screen 12x16, kettle type bowl, tube clamp, stereoscopic shift,' as well as a 'orthodiagraphic attachment to the vertical fluoroscope.' "

It was also alleged, among other things, that the installation of the equipment was completed in July, 1930, with the exception of the Wappler table and its appliances; that the company, finding it could not fill its contract in regard thereto, offered to furnish "in lieu therof a new Keleket Table equipped in all respects as the Wappler Tilt Table," and that the plaintiff agreed to accept this proposition upon the condition that such table "embodied all the features, appliances and equipment incident to the Wappler Tilt Table"; that in violation of this agreement and understanding, "the defendant knowingly, willfully, wantonly and fraudulently furnished to plaintiff a second-hand Keleket Table which embodied none of the features, appliances or equipment of the Wappler Tilt Table," but which was equipped with a defective and an unusable horizontal fluoroscope; that the

representations made to plaintiff by the defendant, that the Keleket Table furnished was a new one and was equipped as a Wappler Table, were false and were made by the defendant to induce the plaintiff to enter into the contract, and that he relied thereon; and that, although repeated complaints were made to the company, it refused to remedy the defects but fraudulently breached its contract, "and plaintiff therefore has elected to rescind said contract." A second cause of action was also stated to the effect that it was agreed between the parties that the company would furnish the plaintiff with a workable orthodiagraphic attachment to the vertical fluoroscope, but that it fraudulently breached the contract by furnishing and installing an inefficient and unusable one, and by refusing and failing to remedy the defects upon plaintiff's demand, "and plaintiff therefore has elected to rescind said contract." Judgment for both actual and punitive damages, in the sum of $2,900.00, was demanded.

The company, answering the complaint, denied all allegations of fraud on its part, and alleged that the plaintiff had defaulted in the payment of certain purchase money notes executed by him as evidence of his indebtedness to the defendant, and asked judgment, by way of counterclaim, for the possession of the property or its value, and for a dismissal of the complaint with costs. The plaintiff, in reply thereto, denied the right of the defendant to possession of the property.

We find in the agreed statement of facts that the action was begun "by the filing of a summons and complaint and the issuance of a warrant of attachment against certain property (apparently the same here in question) alleged to be the property of the defendant," and that the company thereafter "procured the discharge of the attachment under the provisions of section 543 and 544 of the 1932 Code."

The case was tried at the October, 1932, term of Court of Common Pleas for Anderson County, Judge C. J. Ramage presiding. Before the pleadings were read, counsel for the

defendant called to the Court's attention that the allegations of the complaint were appropriate to an action for rescission of the contract or to an action for breach of warranty or to an action for fraud, and moved that the plaintiff be required to elect upon which he would go to trail. Judge Ramage, however, reserved his decision and later refused the motion. He also overruled the defendant's motion for a directed verdict on the two causes of action alleged in the complaint and on the company's counterclaim, and submitted the case to the jury who found for the plaintiff $1,500.00 actual damages. The defendant then, at the same term of the Court, made a motion for a new trial, which was marked "heard" by the presiding Judge, and which, by an order filed May 27, 1933, the Court granted unless the plaintiff within twenty days from the date of such filing remitted on the record all of the verdict except $950.00. The plaintiff complied with the order on June 5th, and on June 9th, his attorneys notified defendant's counsel by letter that such remittitur had been made. On June 17th, the defendant served the plaintiff with written notice of intention to appeal from the order refusing the motion for a new trial and from judgment to be entered on the vedict. Judgment was entered on July 11th, and on July 12th, the defendant's attorneys served plaintiff's counsel with notice of intention to appeal therefrom.

Counsel for respondent, on call of the case for argument, moved to dismiss the appeal on the ground that the Court was without jurisdiction to hear it, in that notice of intention to appeal was not served by defendant within ten days from the rising of the trial Court, or within ten days from the judgment and order of the Circuit Judge. They also moved the Court to allow the respondent judgment against the defendant for $1,500.00, "on the ground that the Circuit Judge had no authority to give a new trial *nisi,* the Court having adjourned *sine die,* before the motion for a new trial had been heard and decided."

We think that the notice of intention to appeal was given in time. Section 781 of the Code of 1932 provides: "That whenever a motion for a new trial upon the Judge's minutes shall have been made and the decision thereon not be both heard and filed at the term at which the trial is had, then notice of intention to appeal either from the judgment or the order granting or refusing a new trial shall be given to the opposite party or his attorney within ten days after written notice that such order has been granted or rendered."

As we have already stated, it is conceded that the appellant's counsel received a letter from respondent's attorneys on June 9, 1933, apprising them of the fact that Judge Ramage's order granting a new trial *nisi* had been filed and that plaintiff had complied with its provisions. Unquestionably, the defendant had ten days from that date in which to serve its notice of intention to appeal to the Supreme Court, and having concededly given such notice on June 17, 1933, it was well within time. The notice of intention to appeal given on July 12, 1933, after entry of judgment, was both unnecessary and out of time. The case of *Linder v. Cowpens Cotton Oil Company*, 146 S. C., 355, 144 S. E., 73, 75, is not controlling. It is true that the Court there held that "it was not until the plaintiffs remitted on the record the amount specified, and thereby prevented the operation of the order granting a new trial, that the defendant desired to appeal or had any need to serve a notice of intention to appeal." However, it would seem that this conclusion is not in accord with the express provision of the statute above quoted, which clearly provides that notice of intention to appeal must be given within ten days after the party desiring to appeal has received written notice of the filing of such order. That was done in this case.

Nor is there merit in the contention that the Court below was without jurisdiction to grant a new trial *nisi*. The motion was made and marked "heard" by

the Court in term time; and while it is not made to appear from the record that respondent's counsel consented thereto or acquiesced therein, the presumption arises, nothing appearing to the contrary, that they agreed to or acquiesced in such arrangement. The following language used by the Court in *King v. Western Union Telegraph Company*, 167 S. C., 500, 166 S. E., 629, 631, is applicable here: "It is true that, under our practice, the trial Judge, upon motion for a new trial, may mark the case 'heard' and decide the motion after final adjournment of the Court; but in order for the trial Court to retain jurisdiction of the matter after *sine die* adjournment, it is not only proper but necessary that counsel representing the opposition—the defendants in this case—consent to such arrangement or acquiesce therein by making no objection thereto at the time. However, we do not find in the transcript of record before us any statement of fact that, at the time the motion was made and the notations were entered on the calendar, counsel for the defendants were not present and did not consent thereto or acquiesce therein. * * * The presumption arises that the motion was made and acted upon in accordance with the usual practice in the trial Courts of this state with respect to such matters, and that counsel for the defendants consented to the arrangement or acquiesced therein. When the defendants, as a basis for attacking the trial Court's jurisdiction to decide the motion after its final adjournment, contend that the facts are otherwise, they are bound, in order to prevail, to show in the record on appeal to this Court that such is the case."

The first question presented by the defendant's appeal is whether the plaintiff should have been required to state the theory of his case. The motion was made on the ground, as already indicated, that the complaint alleged matters that were appropriate to any of several different and inconsistent remedies or causes of action. A reading of the complaint, portions of which are above referred to, discloses that its allegations are unquestionably appropriate both

to an action for fraudulent breach of contract and to an action based on rescission. As these are inconsistent remedies, the plaintiff could not pursue them both, and the defendant, therefore, was entitled to have him elect, in this state of the pleadings, upon what theory he would proceed to trial.

The respondent does not now contend that the Court's refusal to require plaintiff to elect was not error, but argues that the motion to elect was waived by the defendant. It is true that when the trial Judge suggested he could more intelligently pass upon the matter after hearing the testimony, counsel for the defendant remarked, "Whatever your Honor thinks proper." But it is to be kept in mind that the defendant had done all it could do, and all that was required, in making the motion at the proper time and in submitting to the Court the grounds of such motion. And while it is also true, as contended, that counsel for the defendant moved for a nonsuit and for a directed verdict on the ground that there was no evidence to sustain the allegations of fraud, and also submitted requests to charge along that line, it is evident that, in all of this, they were endeavoring to meet the "situation" which had arisen by reason of the Court's refusal to require an election. We do not think, therefore, it may properly be held that the defendant, in the circumstances, waived its motion as contended. The exception raising this question is sustained.

Several other questions are presented by the appeal, but in view of the conclusion reached it becomes unnecessary to consider them.

The judgment is reversed, and the case remanded for a new trial.

Mr. Chief Justice Blease, Mr. Justice Bonham and Mr. Acting Associate Justice W. C. Cothran concur.

Mr. Justice Carter (concurring in result) : I do not agree with the views expressed in the leading opinion in this case which are in conflict with the holding of the Court in the case of *Linder v. Cowpens Cotton Oil Company,* 146 S. C.,

355, 144 S. E., 73; but I concur in the result of the conclusion reached.